A. LAFOREST *v.* R. R. BARROW.

Where, to enforce a mortgage containing the pact *de non alienando* property had been sold
    under an order of seizure and sale, prosecuted contradictorily with the third possessor, who was an
    absentee, by the appointment of a curator *ad hoc*, and when the order of sale, and all the pro-
    ceedings under it, were subsequently homologated by a monition; *Held:* that the judgment could
    not be collaterally attacked by one claiming to have derived his title subsequently from such third
    possessor.
The purchaser in possession under such a sale cannot be disturbed in his title, on the ground of
    irregularities and defects in the executory proceedings, from which the parties in interest might at
    the time have been relieved by appeal.
The vagueness and uncertainty in the description of the property in the act of mortgage will not be
    permitted to operate to the injury of a purchaser in good faith who went into possession under
    the sale of the property, which was understood at the time to be the object of the mortgage and
    sale under it. The notice with which the parties under whom a claim is set up adverse to the pur-
    chaser, is chargeable, is sufficient to vest in the purchaser a valid title to the land which he went
    into possession of under the sale, notwithstanding an uncertainty in the description as to the land
    sold.

APPEAL from the District Court of Terrebonne, *Cole* J.
    *Beatty & Bush*, for plaintiff and appellant. *Miles Taylor & W. H. Tay-*
*lor*, for defendant.

MERRICK, C. J.   The plaintiff and defendant claim to be owners of the tract
of land in controversy, in virtue of titles derived from the same author.

The plaintiff claims, by direct conveyances from *James Bowie* and the defen-
dant, in virtue of a forced sale made by the Consolidated Association upon a
mortgage given to that institution by *James Bowie*, and a purchase at the She-
riff's sale by said Consolidated Association, and a transfer by it to the defen-
dant.

The defendant's title is the oldest, and the plaintiff's counsel admit that it is
incumbent on them to show it to be defective before they can recover.   They
propose, in substance, to do so in two modes, viz:

1st. They allege that the proceedings of the Consolidated Association, in their
order of seizure and sale, were null, and hence no title was conveyed by the
sale to the bank by the Sheriff, nor by the bank to *Barrow*.

2d. That the description of the property in the act of mortgage was vague
and uncertain, and could convey nothing which could prejudice subsequent
purchasers in good faith.

I. *Laforest* claims in virtue of a transfer from *Robert J. Walker*.   The act
of mortgage given by *James Bowie* to the bank when he borrowed the money
upon his mortgage and pledge of stock contained the pact *de non alienando*.

*Walker*, *Duncan Walker* and *Wilkins* bought of *James Bowie*, and when
*Robert J. Walker* bought the interest of his co-purchasers, he bought the stock
in the Consolidated Association which was secured by the mortgage of *Bowie*
to the bank.   The objections to the executory proceedings are that no such
proceeding could be instituted upon the mortgage as against *Walker*, and if
such proceeding could be instituted against him, the present one was defective
for non-observance of the legal delays and forms; that the attorneys *ad hoc*
appointed to represent the defendant, *R. J. Walker*, the absentee, could not
waive the required proceedings and accept services; that prescription had inter-

vened before taking the legal steps to interrupt its acquisition, and that the order of seizure and sale was null because a copy of the bond of *Bowie* was annexed to the petition instead of the bond itself.

We remark that at the time the order of seizure and sale was signed by the Judge ten years had not elapsed from the maturity of the bond to the date of such order. Moreover the bond had credits endorsed upon it which, if correctly made, interrupted prescription from the date of such payment.

If it be conceded that one, not a party to the order of seizure and sale, can callaterally question its regularity in this particular, we think the burden of proof would be upon him to show that the alleged payments were fictitious and improperly made, and that the order of the Judge was granted upon an instrument absolutely barred by prescription.

In regard to the other objections, we observe that no appeal was taken by *Walker*, and that the proceedings in the order of seizure and sale were confirmed by a monition. Under the facts of the case, we do not see how it is possible for the plaintiff to question in this collateral manner the regularity of the proceedings in the order of seizure and sale.

If the Judge of the District Court granted the order of seizure and sale upon a copy of the bond instead of the bond itself, it was at most but an error in the judgment, subject to revision on appeal, and one which was not injurious to *Walker*, as we must presume from the fact that the bond really existed, and *Walker* never thought it worth his while to appeal.

If *Walker* did not chose to appeal upon a mere matter of form, it is clear that no other persons ought to avail themselves of the objection, particularly after the homologation of the order and all of the proceedings by a monition. Revised Statutes, p. 341, § 7.

The institution of the executory process against *Walker* instead of *Bowie* was one of which he, *Walker*, could not complain, for he was in possession of the property, and was thus notified of the necessity of making payment in order to relieve his property from seizure, he being the owner of *Bowie's* stock secured by the mortgage.

If, under the pact *de non alienando*, a sale of the property would have been legal without service upon *Walker* and by service upon *Bowie* merely, it cannot be the less so by service upon the third possessor, who really represents the property which it is the object of the proceeding to sell, and who is to be injured by the sale. Moreover in this case the defect is cured by the monition, which is notice not only to *Bowie* and *Walker*, but to all other persons besides.

II. The second point presented by the plaintiffs and appellants is much more difficult.

It grows out of the description in *Bowie's* mortgage to the Consolidated Association, dated 15th June, 1829, under which the order of seizure and sale issued in 1840, and the land was sold by the Sheriff on the 21st September of that year.

The description of the mortgage is in these words: "A plantation, situated in the parish of Terrebonne, measuring seventy-five arpents on the Bayou Bœuf *alias* Bayou du Large, on the left bank of said bayou, by forty arpents in depth and fifty arpents front on the same bayou, on the right bank, by the same depth of forty arpents, bounded above by other lands belonging to said *Bowie*, and below by *Mr. Edmond Hogan* on the left bank and by *Mr. William Hargrove* on the right bank of the said bayou, of which plantation there is now only a

small number of arpents in cultivation, the greater part being in standing wood and wild cane."

The order of seizure and sale, as well as the monition, having followed this description of the property, it is the title under which the defendant must, if at all, protect his possession. In itself it appears well enough upon paper, but contains a latent ambiguity, which makes its application to *Bowie's* land upon Bayou du Large very difficult.

*Bowie* owned two tracts of land upon Bayou du Large of eighty arpents front on both sides of the bayou by a depth each side of forty arpents. The upper tract is called in this controversy the "Gabion tract;" the lower tract is called the "Felicé tract," they being two confirmations by Congress to persons of those names. The defendant is in possession of and claims so much of the "Gabion tract" as could be found after sales made by *Bowie* prior to the mortgage to the bank were carved out of it. The plaintiff contends that the "Felicé tract" answers the description contained in the mortgage better than the "Gabion tract."

The District Judge has examined the hypothesis of the plaintiff and the pretensions of the defendant in this respect, in an elaborate and able opinion which he has placed on file, and he has arrived at the conclusion that both *Walker* and *Laforest* are chargeable with notice, and that as against them the description in the mortgage, accompanied as it has been by possession, was sufficient to vest the title to the land in controversy in the defendant.

We concur fully in the reasoning and conclusion of the District Judge on this branch of the case, and deem it sufficient to state, as we have done, the result, simply observing that although the "Felicé tract" corresponds in more particulars with the boundaries mentioned than does the "Gabion tract;" yet it is shown that there was no improvement at all upon that tract of land, whilst there was a small improvement upon the other; that the "Gabion tract of land is identified by one of the witnesses, who appraised the land for *Bowie* and the bank, as the one appraised, and moreover, that all parties, up to the sale of *Walker's* pretensions to *Laforest*, in 1855, seem to have treated the "Gabion tract" of land as the one covered by the mortgage.

It is true that Article 3273 of the Civil Code requires that a mortgage, in order to be valid, should describe the nature and situation of each of the immovables on which the mortgage is granted; yet we think that where a sale of the mortgaged property has been made under an order of seizure and sale, and possession has followed the title, that an error in some of the boundaries ought not to be permitted to defeat the title, where the most important calls in the description are answered, and the identity of the tract is also established *aliunde*, particularly in favor of one purchasing with notice, as in the present case with *Laforest*.

Judgment affirmed.

LEA, J., is recused in this case on the ground of interest.