Bryan et al. vs. Wisner

## No. 1287.

### C. A. BRYAN ET AL. VS. EDWARD WISNER.

1. In case the description of land in a sheriff's *proces verbal* and deed of sale is by legal subdivisions and also by the ancient name of the plantation, its situation with reference to a natural water course, its contiguity to other properties of adjacent proprietors and the aggregate quantity of land conveyed, the quantity will not be alone determined by the legal subdivisions, but by the entire description, as indicating the true intention of the parties.

2. If the description given of a tract of land taken as a whole informs the public what property is covered by it without stating the township or other legal subdivisions, it will be sufficient—as, for instance, where it is described as being on a particular stream in a designated parish adjoining certain named properties, or upon the stream upon which it is situated within the parish designated, with the number of acres it contains and reference made to the conveyance by which the vendor acquired it.

3. If a portion of the description would mislead, it must be read with and controlled by other parts, which explain it; and an error in a description by legal subdivisions may be cured by other descriptive designations of the property in the conveyance, which leave no doubt of the particular tract that was intended to be sold.

APPEAL from the Twenty-seventh District Court, Parish of Richland. *Williams, J.*

*Elam & Dagg* for Plaintiffs and Appellants.

*C. L. Berry* and *H. P. Wells* for Defendant and Appellee.

The opinion of the court was delivered by

WATKINS. J. The object of this action is to compel defendant to accept title to a valuable plantation and comply with the terms of a proposed sale thereof.

The averment of plaintiffs' petition is that on the 21st of April, 1891, they prepared and submitted to the defendant a written proposition for the sale of the tract of land known as the Hope estate,

more particularly described by legal subdivisions, containing 4628 acres, more or less—including, also, the working cattle and plantation stock, farming implements and standing crops—for and in consideration of the sum and price of $29,000. That on the 27th of the same month and year said proposition was accepted by the defendant, but he has since wholly failed and refused to comply therewith and perform his part of the contract, notwithstanding a formal title has been seasonably tendered him.

The prayer is that the defendant be required to accept title and pay the price mentioned; and that the judgment so rendered be made executory against the property, and their vendor's privilege thereon be recognized and enforced.

Plaintiffs make claim, also, for the sum of $1885 as the amount of necessary expenditures made by them in the cultivation and preparation for market of the crops on the plantation during the year 1891, after the date of said agreement of sale, and for the institution of which they aver the defendant to be responsible to them.

They allege their acquisition of the Hope estate plantation at sheriff's sale made in executory proceedings in the foreclosure of a special mortgage, conducted against John Hartington and John C. Adams, agents, under which they entered into immediate possession as owners, and have since remained, and on which they base the prescription of five and ten years, as a muniment of title, good against any demands or counter-claims of their authors.

The defendant admits his acceptance of the plaintiffs' proprosition, but assigns that it is a *nudum pactum*, because there was no consideration paid, and consequently plaintiffs' petition discloses no cause of action. Incorporated in the answer is the further allegation that since his acceptance of plaintiffs' proposition, he [has discovered that plaintiffs have no title to the Hope estate plantation, to the extent of 1480 acres, situated near the centre of the plantation, and embracing the most valuable portion thereof—being of the improved and cultivated portion, and without which he would not have accepted the proposition of the plaintiffs at all.

He avers that plaintiffs derive title from the heirs of William Blount, by means of the executory proceedings above mentioned, which are founded upon an act of mortgage executed by the two aforesaid agents on the 6th of November, 1875, in favor of one John P. Mortimer, Jr., to secure the payment of about $5000, and that

therein said 1480 acres of land is neither mentioned nor described, and hence the plaintiffs derived no title thereto.

On the trial there was a general judgment rendered in favor of the defendant, rejecting the plaintiffs' demands, and they have appealed.

No disposition was, apparently, made of the defendant's exception of no cause of action, and, as it was based on the consideration of the *merits* of plaintiffs' proposition to make sale, and not on the lack of sufficient averment in the plaintiffs' petition, it is evident that the exception was groundless, as such, and was properly considered part of the defendant's answer.

On the main question the facts appear to be as follows, viz.:

On the 26th of April, 1891, C. A. Brown and George S. Kausler submitted a written proposition to the defendant for the sale of "the tract of land known as the Hope Estate plantation, located in Franklin parish, Louisiana, including all stock, tools and improvements, together with their interest in the crop of 1891, and all supplies on hand—for the sum of $29,000," etc.

On the following day that proposition was, by the defendant, accepted in writing.

The title of the plaintiffs was derived under a sheriff's deed of sale, bearing date December 1, 1877, executed in favor of C. A. Bryan and George A. Kausler, as adjudicatees, under and by virtue of certain executory proceedings conducted against John Hartington and John C. Adams, agents of the heirs of William Blount, in the foreclosure of a special mortgage which had been theretofore executed by said agents on the 6th of November, 1875.

Reference to the power of attorney under the authority of which they acted discloses that the property designated is described as the "estate owned by them"—the heirs of William Blount—"in the State of Louisiana, called the Hope Estate plantation, situate in the parish of Franklin, said State," etc., without the designation of any legal subdivisions.

In the act of mortgage in favor of John P. Mortimer, the property is described as "the Hope Estate plantation, situated in the parishes of Franklin and Catahoula, Louisiana, containing 4397 acres, more or less, being on the waters of Deer Creek, and adjoining the lands of Chauncey Lewis, (the) heirs of Chandler Lewis, and of Mason R. Howe—that portion of said plantation lying and being situated in

said parish of Franklin aforesaid (is) described as follows, viz.:''
*   *   *   then follows the description by legal subdivisions,
coupled with the concluding statement '' containing in the aggregate
3900 acres, more or less.''

The order of seizure and sale describes the property as '' the Hope
Estate plantation, situated in Franklin and Catahoula parishes, and
fully described in the act of mortgage.''

The writ of seizure and sale describes it as ''the Hope Estate plan-
tation, situated in the parishes of Franklin and Catahoula  *  * . *
containing 4397 acres, more or less, on the waters of Deer Creek,
and adjoining the lands of Chauncey Lewis, of Chandler Lewis' heirs,
and Moson R. Howe—that portion of said plantation lying and being
situated in Franklin parish'' (being described as follows)  *  *  *
'' containing in the aggregate 3900 acres, more or less,'' etc.

The description contained in the act of sale to the plaintiffs is pre-
cisely the same as that contained in the writ of seizure and sale,
with the exception of a slight alteration having been made in the
concluding clause, making it read thus, viz.: '' containing in the
aggregate 3900 acres, more or less, in the parish of Franklin, and
497 in the parish of Catahoula,'' etc.

It thus appears that, notwithstanding the proposition of sale des-
ignates the property offered for sale as '' the tract of land known as
the Hope Estate plantation, located in *Franklin* parish,'' and it is
likewise designated in the mandate of Harrington and Adams; yet
they mortgaged to Mortimer '' the Hope Estate plantation, situated
in the parishes of Franklin *and* Catahoula, containing 4397 acres,
more or less;'' and it is thus described in the order of seizure and
sale, in the writ of seizure and sale, and in the sheriff's deed of sale.

There is no complaint made in the defendant's answer that the
plaintiffs did not acquire, at the execution sale, that portion of the
Hope Estate plantation that is situated in the parish of Catahoula,
on the ground either that it was neither covered by the mandate of
Harrington and Adams nor included in the plaintiffs' proposition;
but their objection, on the contrary, is that there is a deficiency of
1480 acres of land, situated *near the centre of the* plantation, and
embracing the most valuable portion of the land in cultivation, and
without which he would not have accepted the plaintiffs' proposi-
tion.   Therefore we may safely assume that all parties perfectly
understood the plaintiffs' offer, and the defendant's acceptance, to

have been, on the one hand to sell, and on the other to buy *the Hope Estate plantation, situated in both Franklin and Catahoula parishes,* though only the name of Franklin parish was specially mentioned. In the light of this assumption the phrase in the act of mortgage to-wit: " that portion of said plantation lying and being situated in said parish of Franklin, aforesaid, is described as follows   *   *   * and contains in the aggregate 3900 acres, more or less"—must be taken as the *measure* of the land situated in *that parish,* and not as restricting the *total amount* of property mortgaged. And the same is true of the like phraseology in the sheriff's deed of sale to the plaintiffs.

From the foregoing, the further argument is easily deduced, that it was the Hope Estate plantation, without special reference to parish lines, that constituted the object of the agreement of the parties.

In this light the defendant's objection to the tendered title appears to be, not that the Hope Estate plantation did not really and actually contain the 1480 acres of land which are alleged not to be included in plaintiffs' title; not that the heirs of William Blount were not the owners, originally, of the missing land—but that the mortgage to Mortimer, and the sale to plaintiffs, did not cover it, and hence the title of the heirs of Blount was never divested.

The defendant's complaint is of the incorrectness of the *description* of the property by legal subdivisions whereby the diminution in quantity is occasioned.

To illustrate—the description of the property by legal subdivisions, in the act of mortgage, begins in this wise, viz.:

"South half of section twenty (20), township twelve (12), range eight (8), containing 640 acres;" whereas, the south half of a section is only 320 acres, ordinarily, or 640 acres can not be contained in a half section.

Again: *"North west half* of section twenty-one (21), township twelve (12), range eight (8), containing 158 66-100 acres," occurs; whereas, the *north west half* is an impossible description, and the west half of section twenty-one (21) must have been intended by the parties.

If these two matters of description be so altered as to conform to the manifest intention of the agents in the execution of the act of mortgage, and that of the sheriff in the execution of his deed of sale

Bryan et al. vs Wisner.

to the plaintiffs, the amount of the alleged deficit in quantity would be diminished by 480 acres.

All other deficiencies are of like character, and may be similarly accounted for. Hence the question arises as to whether this deficit in the quantity constitutes an irremediable defect, which impairs the title of the plaintiffs, or is an error that is curable on adequate proof being administered.

We are clearly of the opinion that it is of the latter and not of the former class.

That this is the correct view is perfectly attested by the plaintiffs' proposition to sell the defendant, not 4397 acres of land described and delineated by certain legal subdivisions, but " the tract of land known as the Hope Estate plantation, located in Franklin parish." It is further attested by the defendant's acceptance of that proposition, containing no other description.

The act of mortgage further identifies the land by the statement that it is situated on the waters of Deer Creek, and adjoining the lands of Chauncey Lewis, (the) heirs of Chandler Lewis and Mason R. Howe.

That is not in the nature of a sale *per aversionem*, inasmuch as the description merely indicates the situation, without giving the specific boundaries of the property sold, but it is the specification of the locality, with reference to natural landmarks and the ancient name of the plantation, together with the number of superficial acres it contains.

By such a description the *title* of the property undoubtedly passed to the purchasers notwithstanding the legal subdivisions—which were superadded—incorrectly described the *quantity* for land conveyed

This interpretation is manifestly correct, and reasonable when applied to this particular case; and it so appears from a casual inspection of the various records referred to in this opinion.

The description of nearly five thousand acres of rural property, by legal subdivisions, is a very difficult matter, if done with perfect accuracy; and particularly when the initial letters are employed, as in this instance, in lieu of complete words of description, is the difficulty increased.

In this case the description was repeated in the act of mortgage, the order of seizure, the writ of seizure and sale, the advertisement and *proces verbal* of sale; and if the pain of nullity of the sale

attaches, because of an inaccuracy of the description by legal sub-divisions and constitutes it an incurable defect, otherwise than by the repetition of the entire proceedings, judicial sales of such property would become *extra* hazardous, and operate as snares for the unwary.

In such case parties in interest have been ever accorded the privi-lege of administering proof of the correct description of the property conveyed, and of fixing and establishing the limits and measurement, conformably to the facts.

In Thornhill vs. Burthe, 29 An. 639, a controversy arose and was decided between two mortgagees, holding mortgages of different rank, and the question turned upon the interpretation to be placed upon the designation of the *range*, in a description by legal subdi-visions, and the court said:

"The land is described by numbers of sections, township and range, and correctly, except the last; and also by the number of acres; and the further recital is made that the notes secured by the mortgage represent the original purchase price of the land bought by Chaleron from Brown, and the act of sale yet further designates the land by reference to the title of Brown from his vendor, the date of which is given. There could be no mistake as to the tract of land, its location, or boundaries, and there is no pretence that the plain-tiffs were misled. The description in the acts sufficiently identifies it, etc.  *  *  *  If the description of a tract of land in an act of mortgage informs the public what property is covered by it, without stating the township, or other divisions, it will be sufficient; as for example, where it is described as being on a particular river in a named parish adjoining named properties; or the bayou upon which it is situated is named, with the parish, the number of acres it con-tains, and reference is made to the conveyance by which the mort-gagor acquired it."

That particular question arises in this case, and we take that de-cision to be perfectly correct; and it is founded upon two preced-ing cases that are cited in the opinion, viz.: The Consolidated Association of Planters vs. Mason, 24 An. 518, and Ells vs. Sims, 2 An. 251.

As the query in this last was propounded so may it be propounded here. Would any one treating with the plaintiffs in regard to the Hope Estate plantation " have been misled or kept in the dark by the omission to accurately state the township, range and section in which the land is situated." We think not.

And the court, applying that principle, said: "It has been said that a distinction may well be taken between urban and rural estates in the minuteness and particularity of detail requisite for a proper and sufficient description of them, a greater accuracy being required for the former than the latter. Bank vs. Barrow, 7 R. 39. And if a part of the description would mislead, it must be read with and controlled by other parts which explain it. Marcotte vs. Coco, 12 R. 167. The error in number of range, in the description in defendant's mortgage, was cured by other descriptive parts thereof, which left no doubt of the particular tract that was intended to be mortgaged." 2 An. 371; 12 An. 148; 21 An. 396; 2 An. 799.

The conclusion of the court in that case is peculiarly applicable to the instant controversy, inasmuch as the property mortgaged and sold is designated as the Hope Estate plantation, of which the heirs of Blount were then owners; it is described as being situated on the waters of Deer Creek in the parishes of Franklin and Catahoula, State of Louisiana; it is mentioned as adjoining the properties of designated estates and proprietors; and the total number of superficial acres that is contained in the whole tract is specified, as well as the number that is contained in each of two the parishes, respectively. To these *indicia* of description is superadded the legal subdivisions of the land.

In our opinion the descriptions in the mortgage and sheriff's sale completely fulfil all the requirements of the decisions referred to.

In a more recent case, decided by the present court—Dickson vs. Dickson, 36 An. 870—quite a similar question arose, and, in the course of its opinion, the court said:

"From a reading of the above description it seems to us that it was clearly the meaning and intention of the contracting parties that the property to be mortgaged was the Rush Point plantation. This is the necessary inference from the words, 'the said property being the Rush Point plantation.' If the language of the act makes it clear that it was the Rush Point plantation that was mortgaged, then the numbers, or legal subdivisions named in the act, become secondary, or merely descriptive of the subject of the contract—the thing mortgaged. It would be a bold proposition for either party to the contract to assert that the Rush Point plantation was not the subject of the mortgage, and one which would not be listened to; but to say that the numbers cited as composing the plantation did

not, in fact, compose it, would not be strange, but be viewed as a misdescription of the property, which, as is well known, is of frequent occurrence in contracts of this kind."

And such is our clear conviction in this case; and it conforms to prior adjudications on the subject. Flemming & Baldwin vs. Watson, 26 An. 545; 2 La. 3; 4 An. 441; 9 An. 29; 15 La. 311.

But the further objection is urged that in this suit the question of error *vel non* can not be examined and determined because the original mortgagors, the heirs of William Blount, are not made parties, plaintiff or defendant, and that, hence, they would not be bound by the judgment pronounced, and their title in the deficiency of land could not be thereby divested.

On the hypothesis that the alleged deficiency is only the result of a simple misdescription in the legal subdivisions given in the deed, and not an incurable defect, that objection is readily answered in two ways: (1) that by the plaintiffs' monition proceedings and judgment homologating the sheriff's sale, on the 3d of December, 1878, all persons interested in the property, or who were entitled to set up any claim or interest in it; or assert any irregularities or informalities in the proceedings; or any error in the description of the property sold, were concluded and perpetually barred from the subsequent assertion thereof; (2) that by plaintiffs' pleas of five and ten years' prescription, predicated upon the order of seizure and sale, and the sheriff's adjudication thereunder, and their peaceable and undisturbed possession of same, the former owners are barred and precluded from urging any adverse pretensions they may have had.

In Pattison vs. Malony, 38 An. 885—a case precisely similar to this—this court gave force and effect to the prescription of ten years, as a muniment of the title tendered to a purchaser, and compelled the defendant's acceptance of it.

On the score of the plaintiffs' demand for the reimbursement of sums advanced upon the crops of 1891, as an element of their proposition of sale, as well as on that of their demand for judgment for the price of sale, we think it is premature. Those are merely incidental questions that may or may not arise hereafter. The only question we are called upon *now* to decide is the enforceability of the plaintiffs' proposition. This is, strictly speaking, a suit to compel specific performance of a contract for the sale of real estate, the

payment of the price of which is one of the conditions precedent. R. C. C. 2439.

The defendant's obligation to pay the price can not be assimilated to the alternative obligation to respond in *damages* for the nonful-filment of a contract, as contemplated in R. C. C. 1297.

This demand should be rejected as of non-suit.

It is therefore ordered and decreed that the judgment appealed from be annulled and reversed; and it is further ordered and decreed that there be judgment recognizing and enforcing the plaintiffs' proposition of sale to the defendant, and compelling his compliance therewith, according to its terms and tenor; and that the defendant be taxed with all the costs of both courts.