OVERTON, J.
 

 Plaintiff claims to be the owner of a strip of land, containing about 22 arpents, lying in the parish of St. Mary along the west boundary of section 10, township 14 south, range 7 east, running from the southern to the northern boundary of said section. On January 10, 1917, he entered into a contract with the Baldwin Lumber Company, Limited, to sell it the timber on said land at the price of $8 per thousand feet, on an estimate to he made by Walter X. Kemper, the payment to he made in cash, on the execution of the deed. The contract contains the following stipulations, to wit:
 

 “This agreement is accepted by the Baldwin Lumber Company, Limited, provided that the said land shall be found to belong to the said Bayard, and that he shall establish his title thereto to its satisfaction, or, if not, that he may cause same to be established by suit
 
 *997
 
 against the said company to compel same to purchase said timber, and, in so doing, shall establish his right to sell same; it being agreed that, upon the establishing of said right and the showing of the said estimate of the said Kemper, decree in favor of said Bayard shall be rendered accordingly.
 

 “It is distinctly understood that both parties hereto claim the said land, and that nothing herein shall be considered as a recognition of the title of either party by the other signing hereto, nor shall anything herein estop either party from asserting any title, right, or_ claim which he may otherwise have to the said land, or the timber thereon. And the Baldwin Lumber Company, Limited, with the above proviso, agrees to this contract.”
 

 J. Allen Barnett, Robert S. Barnett, and C. F. Borah made themselves parties to the act, binding themselves, in solido, to guarantee the performance on the part of the Baldwin Lumber Company, Limited, of its part of the contract, and to pay for the timber, as stipulated in the contract, should it be found that Bayard has title to said property. The contract provides that the Baldwin Lumber Company, Limited, may proceed to cut said timber, with the understanding that it will pay for it should it be determined to belong to Bayard.
 

 After the execution of the contract, the Baldwin Lumber Company, Limited, availed itself of the right granted it by that instrument to proceed at once with the cutting of the timber, and cut it and hauled it away.
 

 Something over a year after this contract had been entered into, plaintiff, through his counsel, addressed a letter to one of the attorneys for the Baldwin Lumber Company, Limited, mailing a copy of it to that company, in which he set out his chain of title to said strip of land, upon which the timber he had agreed to sell was growing, and in which he asserted that the chain vested title in him, and, therefore, that the obligation rested with the Baldwin Lumber Company, Limited, to pay him for the timber. The Baldwin Lumber Company, Limited, was not satisfied with the chain of title presented by plaintiff, and therefore refused to pay unless plaintiff established title.
 

 When the Baldwin Lumber Company, Limited, refused to accept the title tendered, plaintiff instituted the present suit. The purpose of the suit is to recover judgment against the Baldwin Lumber Company, Limited, and its sureties for $5,840, the value of said timber. Plaintiff sets out the chain of title under which he claims the land, and attaches to and makes part of his petition the foregoing contract. He also pleads, as muniments of title, the prescriptions acquirendi causa of 10 and 30 years.
 

 Defendants, for answer to this suit, deny that the chain of title set out by plaintiff shows that the ownership of the land, from which the timber was cut, is vested in plaintiff, or was vested in him when the timber was cut, and also puts the title, so set out, at issue. They also aver that one of them, the Baldwin Lumber Company, Limited, was the owner of said timber at the time it was cut, having acquired it, along with other timber, from M. A. Patout & Son, Limited, which corporation, they aver, was the bona fide owner of the land upon which the timber grew.
 

 The evidence discloses that the land claimed by plaintiff, from which the timber was cut, formed part of a tract selected by the state of Louisiana, by warrant 154, under the act of Congress of date September 4th, 1841 (5 Stat. U. S. 453), and was approved to the state by the Secretary of the Interior on April 13, 1858, and that the state sold the land to Simeon Patout on May 7, 1847. Whether Simeon Patout or his heirs sold or disposed of the land does not appear from the record.
 

 The evidence also shows that in 188S a tract of land, which contains the same superficial area. as the land claimed by plaintiff, and which .plaintiff contends is the same land, was seized by Mrs. Blanche Bayard as
 
 *999
 
 belonging to H. B. Bayard, to satisfy a judgment of the former against the latter, and was sold at sheriff’s sale to O. P. Romero, Charles T. Kratzer, Alfred Duboin, Joseph Bonin, Gervais Kleinpeter, and E. B. Bayard, the plaintiff herein.
 

 It also appears that on January 10, 1888, Mrs. Irma Bayard, wife of Gervais Klein-peter, Mrs. Blanche Bayard, wife of Charles T. Kratzer, Mrs. Aminthe Bayard, wife of Alfred Duboin, and Mrs. Zulmee Bayard, wife of Joseph Bonin, each, with the authorization of her husband, sold, with full warranty of title, to O. P. Romero and to plaintiff, what they termed their whole undivided interest in the same land as that described in the deed of the sheriff.
 

 As the foregoing deed of Mrs. Irma Bayard, wife of Gervais Kleinpeter, and others to Romero and to plaintiff recites that the land conveyed by it is the same land as that acquired by the vendors and purchasers named in it, at the sheriff’s sale, above mentioned, and as it was signed by the husbands of the vendors, although only for the purpose of authorizing their wives, still, in view of the recital mentioned the deed may be treated as conveying, to all intents and purposes, such interest as the husbands had in the land, described in it, as well as such as their wives had.
 

 It also appears that some time after the execution of the foregoing deed, O. P. Romero, another of the vendees named in the sheriff’s deed, and his wife, Mrs. Cec'ile Bayard, sold their undivided interest in the same land, as that described in the sheriff’s deed, to plaintiff.
 

 As Romero had acquired with plaintiff all of the interest that the remaining vendees, named in the sheriff’s sale, had acquired in the land conveyed by that sale, therefore, by the deed from Romero and his wife to plaintiff, plaintiff became the owner of all the right, title, and interest .that H. B. Bayard possessed in the tract sold at sheriff’s sale.
 

 The foregoing constitutes the title, by deed, produced by plaintiff. Defendants contend that the title produced fails to show that plaintiff was the owner of the timber for two reasons. One of these reasons is that, in the sale from the state to Simeon Patout, the land from which the timber was cut is described by reference to government subdivisions, whereas the land described in the sheriff’s sale, through which plaintiff traces, and in all succeeding sales, contains no reference whatever to government subdivisions, but is described merely by reference to lands belonging to adjoining owners; that is to say, as bounded by lands belonging to such owners, and that the record contains no evidence whatever identifying the land described in the sheriff’s sale, and in succeeding sales, as forming .part of the land purchased from the state by Simeon Patout. The second objection to the title produced is that, assuming that the land described in the sheriff’s sale, and in the succeeding sales, 'forms part of that purchased by Simeon Patout from the state, still plaintiff has failed to connect his title with that acquired by Patout, in that he has failed to show that I-I. B. Bayard, from whom he traces, through the sheriff’s sale, ever acquired Patout’s title, and hence that plaintiff’s title is fatally defective.
 

 With respect to the first objection to the title produced, it may be said that it is beyond dispute that it is amply sufficient in conveying land to describe it as bounded by lands belonging to others. In fact, this method of describing land, in transferring it, is commonly used, and is amply sufficient to meet all legal requirements and all practical purposes. However, when land is sold by reference to government subdivisions, and thereafter, in disposing of it, no reference is
 
 *1001
 
 made to such subdivisions, but the land is described instead only by reference to lands belonging to adjoining owners, and it becomes necessary in a contest over the land, to identify it as being the same land described by reference to government subdivisions, or a part of that land, it then becomes necessary that evidence be introduced to enable the court to say that, notwithstanding the change in description, the land is the same, in whole or part, as the case may be. Sec Hemken v. Brittain, 12 Rob. 46. In this, plaintiff’s case is weak, for the evidence leaves it uncertain whether the land described in the sheriff’s deed, and in the later deeds, forms part of the land purchased from the state by Simeon Patout.
 

 With respect to the second objection urged to the title produced, if we assume that the land described in the sheriff’s sale, and in the succeeding sales, is part of that purchased by Simeon Patout from the state, still the title, by deed, produced by plaintiff, is fatally defective, for he has not shown that Patout or his heirs parted with their title, and that Bayard, his ancestor in title, acquired it. See Bruton v. Braselton, 157 La. 64, 101 So. 873.
 

 Plaintiff, however, has introduced, over objection, evidence to show that two of the three heirs of Simeon Patout recognized H. B. Bayard as the owner of the land, and hence are estopped from questioning the title that he (plaintiff) holds from Bayard, emanating from the sheriff’s sale, and as to the third and remaining heir, who was Irma Z. Patout, wife of H. B. Bayard, and who was the mother of plaintiff, he contends that he has acquired the ownership of the interest of her daughters, in the land and timber in controversy, who, with him, constitute her heirs. And hence he argues that his failure to show that Bayard, who was his father, acquired title from Simeon Patout or his heirs is unimportant.
 

 The evidence relied on to show the estoppel, as to the two heirs of Simeon Patout, who plaintiff claims are estopped, is as follows:
 

 (1) That, in the succession of Irma Z. Pat-out, who was a daughter of Simeon Patout and the wife of H. B. Bayard, it appears that a tract of land was inventoried and appraised as belonging to the community of acquSts and gains that existed between Bayard and his wife, which was apparently the same property as that later sold at sheriff’s sale as belonging to Bayard, and that Felix Pat-out acted as an appraiser in appraising this property, and it is argued that, in so far as Felix Patout is concerned, his having acted as appraiser in appraising the land, is a recognition on his part that the land belonged to the community that existed between Bayard and his wife. (2) That the record discloses that Hypolite Patout, another son of the deceased, in instructing the men undef him where to cut wood and timber for the use of a plantation belonging to the Patout heirs, this being prior to the sheriff’s sale mentioned above, instructed them to be careful not to cut the wood and timber from the land forming the basis of the controversy in this suit, for the reason that it belonged to H. B. Bayard, and it is argued from this that Hypolite Patout is estopped from questioning that Bayard owned the land, and hence from questioning plaintiff’s title emanating from Bayard.
 

 With respect to the first ground of estoppel urged, it may be said that there is nothing in the record to show that Felix Patout had any knowledge that in making the appraisement he was appraising property in which he had an interest. In fact, we, ourselves, are unable
 
 to
 
 say from the description contained in the inventory that the property appraised forms part of that purchased by Simeon Patout from the state. While the property may be the same, this
 
 *1003
 
 does not appear from the face of the two descriptions themselves. Therefore, under the circumstances, no foundation appears for the estoppel urged. See Wells v. Blackman, 121 La. 394, 46 So. 437. Moreover, if the Baldwin Lumber Company, Limited, purchased the growing timber, as it alleges, it can hardly be held bound by this estoppel, even if the estoppel has a foundation on which to rest, Cor the facts, which form its basis, do not appear of record, and the company was not called upon, before purchasing, to examine inventories in successions, to ascertain whether grounds for such an estoppel existed or not. If the company did not purchase the timber, we doubt that such an estoppel can be urged in a proceeding to require the company to pay plaintiff for the timber, to which proceeding the person, who it is contended is estopped, is not a party.
 

 With respect to the second ground of the estoppel urged, plaintiff objected to the evidence, substantially on the ground that parol evidence was not admissible to prove title to immovable property; 'and, as we appreciate the ruling of the court, the evidence was not admitted to prove an estoppel, or to establish title to immovable property, but for other -purposes. The evidence, in our view, was not admissible to prove an estoppel, the title to immovable property being involved. Civil Code, art. 2290. Chronos Land Co. v. Crichton, 150 La. 969, 91 So. 408.
 

 With respect to the ownership of the interest which plaintiff contends he acquired from his sisters as heirs of their mother, Irma Z. Patout, in the land and timber in controversy, the means by which he acquired this ownership are the deeds conveying to him and to O. P. Romero, and from Romero and the latter’s wife, the land which they referred to as having been acquired by them at sheriff’s sale. In these deeds, plaintiff’s sisters do not refer to. any property inherited by them from their mother, or from their grandfather, Simeon Patout, as representing their mother in Patout's succession. However, as- the deeds transfer their interest in the property described in them, they necessarily transfer that interest, no matter how it was acquired, but, in the present state of the record, as we have said, we are unable to identify, due to the change in description, the land there conveyed as being that from which the timber was cut, and which was purchased by Simeon Patout from the state.For that reason we cannot say that plaintiff acquired the interest of his sisters in the land forming the basis of this suit, and therefore that he acquired the interest of his sisters in the timber in controversy.
 

 Plaintiff has pleaded, as we have seen, as muniments of title, the prescriptions of 10 and 30 years. One of the essentials of the prescription of 10 years is that the one pleading it must hold under a deed translative of the land in controversy. Albert Hanson Lumber Co. v. Angelloz, 118 La. 862, 43 So. 529; Bendernagel v. Foret, 145 La. 115, 81 So. 869. As we have said, we are unable, in the present state of the record, to identify the land described in the deeds, under which plaintiff claims to hold, as being the land in controversy, and hence to say whether the deeds conveying it are translative of that land or not. However, let us assume that the land is the same, still the plea of prescription of 10 years cannot be sustained. One of the essentials of that prescription is that the one pleading it, or his authors in title, must have taken actual 'corporeal possession of the land. In this case, the only act indicating the taking of possession of the land was the occasional cutting of timber for fencing and for fuel purposes. The occasional cutting of timber is insufficient to establish the actual possession required as the basis of a prescriptive title. Lacroix v. Crane, 133 La. 227, 62 So, 657; Howell v. Metropolitan Land Co., 127
 
 *1005
 
 La. 399, 53 So. 664; Frederick v. Goodbee 120 La. 783, 45 So. 606. As no actual possession of tire land was takeh, and as suck possession is necessary for the running of the prescription of 30 years, it follows also that.the plea of prescription of 30 years is not well grounded.
 

 Plaintiff, it may be observed, also urges an estoppel other than those considered. This estoppel is based on the following facts: The Baldwin Lumber Company, Limited, as we have seen, avers in its answer that it acquired title to the timber in controversy from M. A. Patout & Son, Limited. It appears that, prior to the alleged acquisition of the timber by the Baldwin Lumber Company, Limited, from Patout & Son, Limited, the latter instituted a suit against the former, in which it alleged that it was the owner of certain property, the description of which expressly excludes, by way of exception, the land upon which the timber was cut, and it also appears that the Baldwin Lumber Company, Limited, admitted that the allegation made was true. Plaintiff argues from these premises that, as the Baldwin Lumber Company, Limited, has admitted that Patout & Son, Limited, had no title, it follows that, when the lumber company purchased, it acquired none, and concludes, under the facts of the case, that, as the corporation of Patout & Son, Limited, has disclaimed ownership, and as the lumber company acquired no title from it, the title must be vested in him. However, it is sufficient to say that this does not. follow at all. The title, for instance, may be vested in the heirs of Simeon Patout.
 

 The Baldwin Lumber Company, Limited, made no effort to establish the title alleged by it, but rested its case upon the theory that plaintiff had failed to make out a prima facie case. The trial judge rejected plaintiff’s demand absolutely, and recognized the Baldwin Lumber Company, Limited, as the owner of the land.
 

 While the judge was correct in dismissing plaintiff’s demand, yet he should not have done so absolutely, but should have dismissed it only as in case of nonsuit, and should not have recognized the lumber company as the owner of the land and the timber. We so conclude, because the lumber company has established no title, and because it is possible that plaintiff may discover a deed from Simeon Patout to Bayard, and it is not unlikely that he may be able to show that the land conveyed by the deeds which he holds is the same as the land in controversy. We especially conclude that the judgment should be one of nonsuit, because plaintiff and his sisters represent their mother in the succession of Simeon Patout, and, in' so far as this record discloses, the title to the timber, at the time it was cut, was in the heirs of Patout. Moreover, plaintiff contends that the deeds, which he holds, convey to him the interest of his sisters in the land ‘in controversy, which, of course, includes their interest in the timber, and, if the description used in those deeds covers the land in controversy, he should be able easily to show that fact, and thereby show, if the title vested in the heirs of Simeon Patout at the time of Patout’s death, that he (plaintiff) is entitled to approximately a third interest in the proceeds of the timber.
 

 It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by striking from it the recognition of title in said Baldwin Lumber Company, Limited, and by dismissing plaintiff’s demand •as in case of nonsuit, thereby reserving to all parties such rights as they may have in the premises, and as so amended that it be affirmed, the appellees to pay the costs of this appeal.