96 So.2d 4

Luther G. CANTERBERRY

v.

SLADE BROTHERS et al.

No. 42926.

May 6, 1957.

Rehearing Denied June 10, 1957.

Harvey G. Fields, Armand F. Rabun, Farmerville, for defendants-appellants.

Madison, Madison, Files & Shell, Monroe, for plaintiff-appellee.

SIMON, Justice.

On April 19, 1924 plaintiff, L. G. Canterberry, and his wife executed a promissory note in the sum of $159.04, payable on October 19, 1924, and endorsed in blank. The face of said note bears the following statement: "This note is secured by a mortgage of 55 acres of land in Sec. 19, T. 23 N., Range 1 E. and Sec. 24, T. 23 N., Range 1 W. in Union Parish, Louisiana, and payable at Marion State Bank, Marion, Louisiana." The note was secured by and identified with an act of mortgage encumbering the following described property situated in Union Parish:

"36 ⅓ acres in the NW ¼ of SW ¼ of Section 19, Township 23 North, Range 1 East and 19 acres in the NE ¼ of SE ¼ of Section 24, Township 23 North, Range 1 West, containing 55 ⅓ acres, more or less, together with all improvements situated thereon and thereto belonging."

The defendant purchased said mortgage note from the Marion State Bank on April 19, 1927 and on December 13, 1928 instituted suit thereon, together with other notes and claims against Canterberry, entitled Slade Bros. v. L. G. Canterberry, No. 9,091 of the docket of the Third Judicial District Court. Judgment was rendered in favor of Slade Bros. and against the said L. G. Canterberry on January 25, 1929, following which a writ of fieri facias was issued and the said mortgaged property seized. After advertisement and proceedings in accordance with law, the property was sold to the defendants, the highest bidder, by the sheriff on March 30, 1929, the said sheriff's deed bearing the same de-

scription as contained in the act of mortgage. The defendants thereupon went into immediate actual, physical and corporeal possession of said property and retained possession thereof to date. They and their tenants have exercised rights of ownership thereof, cultivating portions of the land, using portions for pasture purposes, selling and removing timber and firewood therefrom, maintaining fences along its boundaries, leasing same for mineral purposes, and other such acts. The property was assessed to the defendants who paid annual taxes thereon.

On the other hand, Canterberry was not assessed for and did not pay taxes on said property. He neither attempted to nor exercised any rights of ownership in any manner whatsoever during this period of almost twenty years, nor did he ever challenge or question defendants' ownership of said property till the magic of oil was discovered thereon in commercial quantities. In fact, the record discloses that Canterberry moved to Richland Parish in January, 1929, and did not return to live in Union Parish until the year 1933. On his return he did not attempt to occupy the property, but voluntarily settled elsewhere in Union Parish.

On March 2, 1950 Canterberry instituted this petitory action against the defendants, Slade Brothers, a partnership, and its individual members who were in actual, physical and corporeal possession of the property conveyed to them by the sheriff's deed. Plaintiff sought to be recognized as the owner of and as such be put in possession of the subject property, described in his petition as follows:

"Tract A: NW ¼ of SW ¼ of Section 19, Township 23 North, Range 1 East, less and except a strip off the south side thereof 99 yards wide north and south and extending across said forty, containing 31 acres, more or less.

"Tract B: E ½ of NE ¼ of SE ¼ of Section 24, Township 23 North, Range 1 West, less and except a strip off the south side thereof 36⅔ yards wide north and south and extending across said subdivision, containing 19 acres, more or less. Said tracts A and B containing together a total of 50 acres, more or less."

Plaintiff delineated the various and sundry deeds forming his chain of title from date of patent, the validity of which deeds are not questioned by defendants.

In his first alternative plea, plaintiff alleged that oil was being produced from "Tract A" under separate oil, gas and mineral leases separately sold and granted to the same lessee by both plaintiff and defendants herein, and that, he, plaintiff, was entitled to maintain as to "Tract A" an action to establish title to real estate under Act 38 of 1908 (LSA–R.S. 13:5062), and by said possessory action to have the title of the land adjudicated to him.

In a second alternative plea, plaintiff cumulated therewith an action of nullity wherein he sought to have the above foreclosure proceedings, its resulting judgment and the sheriff's deed declared invalid, contending that the description of the land contained in the mortgage as well as in the sheriff's deed was so indefinite as not to sufficiently and adequately describe or identify the subject property so as to legally convey and transfer title thereto.

Plaintiff further claimed that all proceedings had in the foreclosure suit culminating in the sheriff's sale were invalid for the alleged reasons that neither the service of the citation and petition in said suit nor the service of notice of seizure in connection with said sale was in fact made upon him.

The defendants filed an exception of improper cumulation of actions, for the purpose of having plaintiff elect as to which remedy, that is, a petitory action or an action to try title, he would pursue. In response to an order by the court, the plaintiff elected to abandon the possessory action, or action to establish title under Act 38 of 1908, and to proceed to prosecute under his other cause of action, namely, the petitory action and the alternative action of nullity.

The defendants further interposed numerous pleas of exceptions, among them being a plea of estoppel, an exception of no cause and no right of action, and special pleas of description, all of which were levelled against the action of nullity, and which were referred to the merits. The exception of misjoinder and non-joinder of parties defendant, and an exception of no cause or right of action directed against the entire petition were overruled.

The defendants, in their answer, represented that they are the true and lawful owners of the subject property, averring the validity of all mesne conveyances, as set forth in plaintiff's petition as well as in defendants' answer, and of the adjudication to defendants by the sheriff based upon the foreclosure proceedings. They reiterate the special pleas of prescription and of estoppel as against the action of nullity and specially plead the prescription of ten and thirty years acquirenda causa. They also aver that even though the property as described in the mortgage deed, the judgment of the court and the sheriff's deed based upon said foreclosure proceedings may not be a perfect description, that it is susceptible to being definitely and accurately identified from the public records of the Parish as well as on the ground. They further aver that since the instant case does not involve the rights of third parties evidence aliunde the instrument can and should be employed to establish the definite description and location of the property; that at the time plaintiff executed the mortgage he could not have intended to nor did he mortgage any other property than the subject property for the reason that he owned no other

property in Union Parish, and that therefore the mortgage and sheriff's deed forming the basis of defendants' title are valid in all respects.

In their reconventional demand defendants aver that if there be any question as to the accuracy of the description of the property, that, because of the facts hereinabove set forth, they are entitled to have the description contained in the sheriff's deed reformed to conform with the intention of the parties and to affect the subject property so mortgaged. In connection with said reconventional demand plaintiff filed the plea of ten years prescription against said demand to reform the sheriff's deed.

After trial on the merits the trial court rendered judgment in favor of plaintiff, decreeing him to be the true and lawful owner of the property here in dispute and directing the defendants to deliver possession thereof to the plaintiff. The trial court further decreed the sheriff's deed to Slade Bros., dated April 22, 1929, recorded in conveyance book 71, page 92, Union Parish, and the sale evidenced thereby made on March 30, 1929 to be null and void and of no effect because of inadequacy of description of the property thereby conveyed. The court also sustained the plea of ten years prescription filed by plaintiff to the reconventional demand of defendants and rejected same in its entirety.

Defendants have appealed and pray to be maintained in their ownership of the property as described in the mortgage and in the sheriff's deed; and plaintiff has answered and prays that the judgment of the trial court be affirmed.

The record discloses that, insofar as the petitory action is concerned, it was stipulated that the chain of title alleged by plaintiff from the patent of 1859 to the acquisition of Canterberry in 1919 was unassailable and that Canterberry was the lawful owner of the property in dispute up to March 30, 1929, the date of the sheriff's sale. However, in alleging his chain of title, plaintiff did not include the mortgage, the foreclosure proceedings and the sheriff's sale, interpreting them as absolute nullities. He contended that he was never divested of title to the subject property.

Thus, the primary issues before us are those raised by plaintiff's action of nullity.

One of the alleged causes for annulling the foreclosure proceedings and the sheriff's deed flowing therefrom is that plaintiff was not served with a copy of the petition and citation, nor was notice of the seizure and sale emanating from the writ of fieri facias served upon him.

In the case of Sims v. First Nat. Bank of Ruston, 177 La. 386, 148 So. 505, we said:

"No citation of authority is necessary to show that one may not be condemned without first being given, in the manner

prescribed by law, an opportunity to be heard. While courts should exercise care to see that such opportunity is given, they should also exercise equal care to see that the returns of service of legal process by sworn and disinterested officers are not overthrown save upon clear-proof that they are false or erroneous, otherwise great uncertainty will surround judicial proceedings * * *. Cf. De St. Romes v. Carondelet Canal & Navigation Co., 24 La.Ann. 331."

In the case of Logwood v. Logwood, 185 La. 1, 168 So. 310, 311, we said:

"It is settled by ample authority that a judgment rendered against a party who has not been cited and who has not appeared is an absolute nullity, which can be invoked, not only by such party, but also by any one interested. Bledsoe v. Erwin, 33 La.Ann. 615; Hamburger v. Purcell, 139 La. 456, 71 So. 765.

"But it is also well settled that as against a collateral attack on a judgment of a court of general jurisdiction, it will be presumed, unless expressly contrary to what is shown by the record, that legal and proper process was issued in the action and that it was duly and regularly served upon the defendant. Verbo, 'Judgment,' 34 C.J. § 842, pp. 541, 552. See, also, Hamburger v. Purcell, supra."

The record unmistakably shows that personal service of citation was made on Canterberry. This is made manifest by the certification of Sheriff F. W. Murphy, who was deceased at the time of the trial of the instant case, to the effect that he, in his official capacity, had made personal service on said plaintiff. The genuineness of the sheriff's signature was fully established in the process of the trial of this controversy. However, plaintiff attacked said return as being false and untrue and to sustain his position testified that he was absent from his home and from the Parish on the day judicial process is shown by the sheriff's return to have been made.

It is well settled in our jurisprudence that while no valid judgment can be rendered without legal citation, yet, in order that uncertainty and confusion might be avoided as to the validity of judgments, great reliance must be placed on the returns made by sworn officers who are entrusted with the service of process. For this reason, a rule has developed which requires more than the uncorroborated evidence of a single witness to overcome the presumption attached to the correctness of the return on process made by a sworn officer. Logwood v. Logwood, supra; Sims v. First Nat. Bank of Ruston, supra.

The burden of proof to establish by clear and convincing proof the alleged nullity of the official return of service of process has not been successfully discharged by Canterberry.

The contention of plaintiff that no notice of seizure and sale was served upon him is equally without merit. The record also shows that notice of seizure under writ of fieri facias was issued by the sheriff's office on February 15, 1929, addressed to Canterberry, giving notice of the seizure of the property therein described and that after the lapse of advertisement sale would be made on March 30, 1929. This notice bears the genuine signature of the then Sheriff, F. W. Murphy. It also appears that due advertisement of the sale was made in the official publication of the Parish as required by law; that a mortgage certificate covering the subject property was prepared by the Clerk of Court and furnished to the sheriff; that on the appointed hour and date the sheriff proceeded to and did sell to the highest bidder, namely the defendants, the subject property so seized; and that the sheriff thereupon executed a deed conveying to defendants the subject property. All of the foregoing formalities complied with the requirements of law.

We now move to Canterberry's contention that the mortgage foreclosed upon by defendants and the resulting sheriff's sale and deed are absolute nullities.

The record discloses that on April 19, 1924, the date of the execution of the mortgage, Canterberry owned no real property in the parish or state other than that which he intended to and did mortgage to the Marion State Bank. Canterberry testified, as he necessarily should have, that he knew the location and acreage comprising the property here in dispute, having lived on and occupied the same, and that it is the same property that he intended to and did mortgage. However, he now contends that the land described in the said mortgage, giving rise to the foreclosure proceedings and culminating in the sheriff's deed to defendants, is so vague and indefinite that it conveyed no property and, further, failed to divest him of title to the subject property. He further testified that he actually owned even less property than the acreage described in the mortgage and sheriff's deed.

Nevertheless, we are convinced that the property described in the mortgage and sheriff's deed, which serve as the basis of defendants' title, when viewed in connection with other deeds executed prior thereto by Canterberry, can be definitely ascertained and is therefore a definite and adequate description of the property so mortgaged, seized and sold. An examination of these deeds as relied upon by defendants reveals that:

By deed dated November 13, 1917, L. G. Canterberry and Hamp Nale acquired the SE ¼ of Section 24, Township 23 North, Range 1 West, and the NW ¼ of SW ¼, Section 19, Township 23 North, Range 1 East, and the NW ½ of SW ¼ of SW ¼ of Section 19, Township 23 North, Range 1 East, containing 220 acres, more or less.

By deed dated December 17, 1919 L. G. Canterberry conveyed to Hamp Nale: S ½ of SE ¼ of Section 24, Township 23 North, Range 1 West and a strip 36⅔ yards wide on the south side of N ½ of said eighty and the NW ½ of SW ¼ of SW ¼ of Section 19, Township 23 North, Range 1 East and a strip 36⅔ yards wide on the south side of NW ¼ of SW ¼ of Section 19, Township 23 North, Range 1 East, containing 110 acres, more or less.

The December 17, 1919 deed was corrected by deed dated January 5, 1924, to correctly describe the property conveyed as follows: S ½ of SE ¼, Section 24, Township 23 North, Range 1 West and a strip 36⅔ yards wide North and South by 880 yards East and West on the South side of N ½ of SE ¼ of Section 24, Township 23 North, Range 1 West and NW ½ of SW ¼ of SW ¼, Section 19, Township 23 North, Range 1 East and a strip 36⅔ yards wide North and South on the South side of NW ¼ of SW ¼, Section 19, Township 23 North, Range 1 East, containing 110 acres, more or less.

These two deeds constituted in part a partition between the said Canterberry and Nale who were the common purchasers of the 220-acre tract.

To further effectuate the partition of their joint acquisition Hamp Nale conveyed to Canterberry the N ½ of SE ¼, Section 24, Township 23 North, Range 1 West less and except a strip 36⅔ yards wide on the South side of the said eighty clear across the said eighty from east to west and all NW ¼ of SW ¼, Section 19, Township 23 North, Range 1 East, except a strip 36⅔ yards wide on South side of said forty across said forty from east to west, containing 110 acres more or less.

By deed dated September 8, 1920, L. G. Canterberry conveyed to Frost-Johnson Company, Inc. the NW ¼ of the SE ¼ and W ½ of NE ¼ of SE ¼ less and except a strip 36⅔ yards wide off the south side thereof, containing 55 acres, more or less.

Thus, as a result of the foregoing transactions by Canterberry it can be easily ascertained that the property owned by him situated in Union Parish, Louisiana, was:

The E ½ of NE ¼ of SE ¼ of Section 24, Township 23 North, Range 1 West, less and except a strip 36⅔ yards wide off the south side thereof being 18⅓ acres that the said L. G. Canterberry owned in this particular forty, he having sold off and transferred W ½ of NE ¼ of SE ¼ of said section, township and range, less a strip 36⅔ yards wide off the south side thereof to Frost-Johnson Company, Inc. and thereby leaving him 18⅓ acres in this particular forty. He also owned the NW ¼ of SW ¼ of Section 19, Township 23 North, Range 1 East, less and except a strip 36⅔ yards wide off the south side of the said forty from east to west containing 36⅔ acres,

more or less, or a total in both tracts of 55 acres, more or less.

The act of mortgage executed by Canterberry on April 19, 1924 describes the property mortgaged by him to be, "36⅓ acres in the NW ¼ of SW ¼ of Section 19, Township 23 North, Range 1 East and 19 acres in the NE ¼ of SE ¼ of Section 24, Township 23 North, Range 1 West, containing 55⅓ acres, more or less, together with all improvements situated thereon and thereto belonging." The identical description of the property as that contained in the mortgage act is contained in the sheriff's deed herein, save and except that in the latter no reference is made to the total acreage contained in both tracts. However, by a simple calculation of the acreage given to each tract so adjudicated the acreage totals 55⅓ acres.

The record further reveals that on November 12, 1923 Canterberry conveyed to O. A. Bennett 5⅔ acres of land described in the NW ¼ of SW ¼ Section 19, township 23 North, Range 1 East, and more particularly described as: "Commencing at a point on the west line of the NW ¼ of SW ¼ Section 19, Township 23 North, Range One (1) East, 36⅔ yards north of the southwest corner of said forty, run thence north 62⅓ yards thence East 440 yards to the east line of said forty; thence south along the east line of said forty to a point 36⅔ yards north of the southeast corner of said forty; thence west 440 yards

to the place of beginning, all being in the NW ¼ of SW ¼ of Section 19, township 23 North, Range 1 East."

Thus it will be seen that notwithstanding having sold and transferred to Bennett 5⅔ acres of land in Section 19, leaving him an acreage total of approximately 50 acres more or less in Sections 19 and 24, we find that Canterberry, less than a year later, executed the mortgage on 55⅓ acres, knowingly including therein the 5⅔ acres he had previously sold to Bennett. Thus it is an inescapable conclusion that at the time Canterberry executed the act of mortgage he owned a total acreage in both tracts of approximately 50 acres, more or less.

The principle of law controlling in this matter is pronounced in Snelling v. Adair, 196 La. 624, 199 So. 782, 787, as follows:

"It is a settled rule of law in this state that if a portion of the description of property in a deed is either erroneous or misleading, it is nevertheless susceptible of conveyance if the property intended to be conveyed by the parties can be ascertained with certainty by the aid of such extrinsic evidence as is admissible under the rules of evidence. Thornhill v. Burthe, 29 La. Ann. 639; Bryan v. Wisner, 44 La.Ann. 832, 11 So. 290; Willis v. Ruddock Cypress Co., 108 La. 255, 32 So. 386; Suthon v. Laws, 127 La. 531, 53 So. 852; Suthon v. Viguerie, 127 La. 538, 53 So. 855; Bayard

v. Baldwin Lumber Co., 157 La. 994, 103 So. 290; Tircuit v. Burton-Swartz Cypress Co., 162 La. 319, 110 So. 489; Harrill v. Pitts, 194 La. 123, 193 So. 562; 13 Cyc. 627; and 36 Cyc. 591. And 'a deed, which was sufficient to convey property as between parties thereto * * * would be sufficient * * * basis upon which to rest plea of prescription of 10 years.' Harrill v. Pitts, supra."

The record is amply fortified with evidence to support our conclusion and further shows that U. S. Roane, a civil engineer, testified to the effect that by a casual inspection of the records, particularly the various deeds of transfer that from the description therein given, he was able to and did fix and determine the identity and location on the ground of the subject property, said plot of survey forming part of the record; that by excluding from the deed of acquisition by plaintiff of the strip of 36⅔ yards wide in the NW ¼ of SW ¼ Section 19, which strip contained 3⅓ acres, would leave a balance therein of 36⅓ acres, less that portion of 5⅔ acres sold to Bennett, or a balance of about 31 acres, more or less; and that in the same manner, by excluding the acreage sold by plaintiff to Frost-Johnson Lumber Co. (NW ¼ of the SE ¼ and W ½ of the NE ¼ of SE ¼ of Section 23 less the strip of 36⅔ yards off the south end), plaintiff was left owning the E ½ of the NE ¼ of SE ¼ less said strip, containing about 19 acres, or a total acreage owned by plaintiff in both sections of approximately 50 acres as called for by the plaintiff in his petition.

The Supreme Court in the case of Snelling v. Adair, supra, quoted with approval from the case of Tircuit v. Burton-Swartz Cypress Co., supra:

" * * * it suffices if the description be 'such as to enable the court to determine with certainty, with the aid of such extrinsic evidence as is admissible under the rules of evidence, what property was intended by the parties to be covered thereby. The description need not be given with such particularity as to make a resort to extrinsic evidence unnecessary.' "

In the case of Laforest v. Barrow, 12 La. Ann. 148, we said:

" * * * we think that where a sale of the mortgaged property has been made under an order of seizure and sale, and possession has followed the title, that an error in some of the boundaries ought not to be permitted to defeat the title, where the most important calls in the description are answered, and the identity of the tract is also established aliunde * * *"

This Court, in the case of Harrill v. Pitts, supra [194 La. 123, 193 So. 565], said that:

"Courts are always liberal in construing the description of property in deeds, so as to sustain, rather than defeat, the conveyance."

Further continuing we said: "The law does not require that a deed, to support the prescription of 10 years, shall contain such a description that the land can be identified without reference to other records." See authorities therein cited.

■ Plaintiff knew the location and description of the property which he encumbered as security for a loan from the bank, this being the only real property owned by him; and as a matter of fact, by his own petition he acknowledged its susceptibility of being adequately described and identified. Immediately following the sheriff's sale the defendants took actual physical possession of the subject property. Plaintiff relinquished his possession and moved his personal effects with his family to another parish where he lived for four years shortly after the filing of the foreclosure proceedings. From date of the sheriff's deed the defendants publicly and openly exercised rights of ownership, as above noted, to the present date. During the course of almost twenty years, even after the plaintiff had returned to Union Parish in 1933 and settled on a farm in another section of the Parish, plaintiff did not make a single protest challenging defendants' public acts of possession as owner, nor assert any right of ownership to the subject property until the filing of this suit in 1950.

Generally speaking, the cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention when consistent with legal principles. The object to be obtained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used. We have no difficulty in determining that the intention of Canterberry was to mortgage the only property owned by him. The fact that the description of the property in the mortgage may have been deficient, such vagueness cannot be made to serve as a detriment to the mortgagee and an advantage to the mortgagor who knew the description, location and acreage of the property he mortgaged and upon whose solemn act and representations, publicly declared in authentic acts, the defendants relied in purchasing the property and parting with a valuable consideration therefor. We cannot say that the description of the property contained in the mortgage and sheriff's deed is so deficient, having regard to its nature, character and location, as to render the mortgage invalid.

The views we have expressed herein dispense with the necessity of inquiring into the merits of the pleas of estoppel and of prescription, and of the alternative plea of reformation advanced by the defendants.

We are convinced that Canterberry, by his own act and its consequences, did in-

tentionally divest himself of property in a manner prescribed by law and that the advent of "oil" prompted his unconscienable demand to be declared the owner of the property encumbered by him at an unsuspicious time.

Accordingly, for the reasons assigned, the judgment of the district court is reversed, annulled and set aside and it is now ordered, adjudged and decreed that there be judgment in favor of defendants recognizing and decreeing them to be the true and lawful owners of the following described land situated in Union Parish, Louisiana, together with all oil, gas and mineral rights and other rights in and to same, subject as prayed for only to the oil, gas and mineral lease granted by them, and, as such, entitled to the full and undisturbed possession thereof:

"Tract A: NW ¼ of SW ¼ of Section 19, Township 23 North, Range 1 East, less and except a strip off the south side thereof 99 yards wide .north and south and extending across said forty, containing 31 acres, more or less.

"Tract B: E ½ of NE ¼ of SE ¼ of Section 24, Township 23 North, Range 1 West, less and except a strip off the south side thereof 36⅔ yards wide north and south and extending across said subdivision, containing 19 acres, more or less. Said tracts A and B containing together a total of 50 acres, more or less."

It is further ordered, adjudged and decreed that plaintiff's suit be dismissed and all costs of this proceeding be borne by him.