J2FITZSIMMONS, Judge.
A shopping center tenant filed a motion for summary judgment. The tenant asserted no genuine issue of material fact, and a legal right of use of the common shopping center parking lot. By judgment dated July 14, 1997, the trial court granted the tenant’s motion for summary judgment, denied the parking lot owner’s motion for summary judgment, and dismissed the suit of the parking lot owner. For the reasons expressed herein, we affirm.
Losavio Realty Co., Inc. (Losavio) and Theo. F. Cangelosi, separately owned various pieces of property that comprised their development, the University Shopping Center. The center owners, Losavio and Mr. Cange-losi, entered into an agreement dated June 26th, 1958. That agreement described the property comprising the center, by reference to a map, which included the parking lot in question. The map was paraphed “Ne Varie-tur” for identification with the June 26th act. Both the agreement and the map were recorded on June 30th, 1958, in the public records of East Baton Rouge Parish. The 1958 agreement, signed before a notary and two witnesses, provided that: “The parking lot, streets, entrances, and service drives ... and the parking lot to be constructed ... shall be used for the benefit of the respective property of the parties ... and for the benefit of the tenants and assigns-” (Emphasis added.) On the last page of the agreement, the parties stated that the “agreement is a covenant running with the land owned by the respective parties ... and shall be binding, not only upon the heirs, successors, and assigns, but also upon all persons including ... purchasers from either of the parties hereto.” The developers further declared that “the covenants entered into herein are not merely personal covenants but are covenants running with the land and shall be binding wpon not only the parties hereto but upon all successors and | ¾assigns of the parties hereto, including purchasers from said parties.” (Emphasis added.)
The property used for the center parking lot and the center property leased to the tenant, the Great Atlantic and Pacific Tea Company (A & P) were included in Losavio’s holdings. The A & P has used the center’s parking lot, apparently without interruption, since 1957.
Plaintiff, Five N, is the most recent purchaser of the center’s parking lot. The defendants, Singer A & P Remainder Trust and Nabel A & P Remainder Trust, are the current owners of the building in the center leased to defendant, A & P. Defendant, Union Planters Bank of Louisiana, the successor by merger of Sunburst Bank, holds the mortgage on the property leased by A & P.
Five N challenged the A & P’s right to use the parking lot. In its petition for injunctive relief and declaratory judgment, Five N asserted that it owned the parking lot “free from any encumbrances, servitudes or burdens in favor of defendants.” Five N asked that the A & P be enjoined from the use of the parking lot, and that the court declare that Five N had the right to deny the A & P the use of the lot for A,& P’s benefit.[2]
Losavio and Mr. Cangelosi clearly intended the use of the parking lot to continue for the benefit of subsequent owners and lessees or tenants identified with either original owner. The only obstruction in 1958 for the creation of some type of predial servitude for the benefit of the A & P was a legal prohibition arising from the singular ownership by Losavio. However, the 1958 agreement is clear;- it was recorded; and, it |4is the dominant document that controls the usage of the property. At the very least, the original owners intended to create restrictive covenants or building restrictions that would run “with the land.” Five N bought the property subject to these encumbrances imposed by the agreement.
In connection with an effort to subdivide a parcel of land, a landowner may unilaterally execute an agreement designed *1068 to restrict the use of his property. Those charges imposed by the owner of an immovable in pursuance of a general plan governing building standards, specified uses, and improvements are called building restrictions. La. C.C. art. 775. The general plan must be feasible and capable of being preserved. Id. Building restrictions may be established only by a juridical act executed by the owner of an immovable, or by all the owners of the affected immovables. La. C.C. art. 776. In order to be effective against third persons, instruments establishing restrictions must be filed for registry in the conveyance records of the parish in which the immovable property is located. See A.N. Yiannopoulos, Predial Servitudes Sec. 193, at 511-14, in 4 Louisiana Civil Law Treatise (2d ed.1997). Thus, building restrictions are incorporeal immov-ables. By their nature, they are sui generis real rights, likened to predial servitudes. La. C.C. art. 777. As real rights, building restriction clauses are not rights that are personal to the vendor. Rather, they inure to the benefit of all other property owners under a general plan of development: such restrictions are real rights running with the land. Blessey v. McHugh, 94-0555 pp. 7-8 (La.App. 1st Cir.7/27/95); 664 So.2d 115, 119-20 (and cases cited therein). Once a document containing such restrictions is recorded in the public records, a subsequent acquirer of immovable property burdened with such restrictions is bound by them. Yiannopoulos, Predial Servitudes Sec. 193 at 514. The restrictions need not |sappear in the act by which the present owner acquired the property nor in his chain of title. It suffices that the document establishing the restrictions was filed for registry, in some form, at the time the original subdivider conveyed the property to the ancestor of the present owner. Id.
The 1958 agreement imposed building restrictions on all successors, heirs, or assigns. Thus, the present parking lot is burdened by those restrictions. The parking lot is restricted to use as a parking lot “for the benefit of the respective property of the parties ... and for the benefit of the tenants and assigns_” As a result of the servitude-like building restriction, Five N does not have the right to deny A & P the use of the parking lot for A & P’s benefit.
The judgment of the trial court is affirmed. The cost of the appeal is assessed to the plaintiff, Five N.
AFFIRMED.

. It appears from the record that the original dispute between the parties arose after the A & P refused to maintain or pay a proportionate share of service drive and parking lot maintenance expenses. However, the petition and Five N's motion for summary judgment do not raise the issues of payment or whether the A & P can only unload groceries from a service drive.