934 So.2d 814 (2006)
OAK HARBOR PROPERTY OWNERS' ASSOCIATION, INC., Oak Harbor Architectural Review Committee, Azalea Lakes Partnership and Oak Harbor Investment Properties, L.L.C.
v.
THE MILLENNIUM GROUP I, L.L.C. and Esplanade Title, Inc.
No. 2005 CA 0802.
Court of Appeal of Louisiana, First Circuit.
May 5, 2006.
*815 Judith Otero, Mandeville, Counsel for Plaintiffs/Appellees Oak Harbor Property Owners' Association, Inc., Oak Harbor Architectural Review Committee, Azalea Lakes Partnership, and Oak Harbor Investment Properties, LLC.
Ross F. Lagarde, Lawrence E. Abbott, McChord Carrico, Covington, David S. Cressy, Mandeville, Counsel for Defendants/Appellants The Millennium Group I, LLC and Esplanade Title, Inc.
Before: WHIPPLE, McCLENDON, and WELCH, JJ.
McCLENDON, J.
Defendants, The Millennium Group I, L.L.C. (Millennium) and Esplanade Title, Inc. (Esplanade), appeal a judgment in favor of plaintiffs, Oak Harbor Property Owners' Association, Inc., Oak Harbor Architectural Review Committee, Azalea Lakes Partnership, and Oak Harbor Investment Properties, L.L.C. The December, 2004 judgment held that the Restated Declaration and Covenants, Conditions, and Restrictions, Oak Harbor Subdivision, St. Tammany Parish, Louisiana, dated June 26, 1989 (restated restrictions), and the Supplementary Declaration of Covenants, Conditions, and Restrictions, Oak Harbor Boater Service Area, St. Tammany Parish, Louisiana, dated July 28, 1994 (supplementary restrictions),[1] "apply to and encumber" lots located in the Oak Harbor Boater Service Area and owned by *816 either Millennium or Esplanade. In the same judgment, the trial court also found that Azalea Lakes Partnership was the "Declarant" identified in the 1994 supplementary restrictions. Further, the trial court held that the Second Supplementary Declaration of Covenants, Conditions, and Restrictions, Oak Harbor Boater Service Area (second supplementary restrictions), which were confected and filed by the defendants in 2004, were invalid, and ordered the St. Tammany Parish Clerk of Court to remove those restrictions from the public record. Finally, a preliminary injunction was issued directing the defendants to cease uses and construction not approved by the restated and supplementary restrictions and to comply with those restrictions in the Oak Harbor Boater Service Area.[2]
After a thorough review of the record before us, we reverse the holding that Azalea Lakes Partnership was the "Declarant" under the supplementary restrictions governing the Oak Harbor Boater Service Area. We affirm the judgment in all other respects.
The injunction prohibits the defendants from developing the Oak Harbor Boater Service Area in violation of the restated and supplementary restrictions. Thus, the primary issue on appeal is whether the restated and supplementary restrictions apply to Oak Harbor Boater Service Area. Initially, defendants argue that the supplementary restrictions failed to adequately describe the property covered by the restrictions. Thus, Millennium argues that, without a description, it had no notice that the property was encumbered by the provisions of either the restated or supplementary restrictions. Secondly, defendants assert that their approval of the second supplementary restrictions, in the absence of a negative act by the "Declarant," was sufficient to amend or revoke the prior restrictions.[3] In response, Oak Harbor asserts that the supplementary restrictions contained an adequate description and the second supplementary restrictions were not validly authorized, regardless of the status or validity of Azalea Lakes Partnership as the "Declarant."

APPLICABILITY OF RESTRICTIONS
Oak Harbor Boater Service Area was developed as part of the larger Oak Harbor Planned Unit Development (Oak Harbor PUD), which was governed by the restated restrictions. As part of the overall plan of development for the Oak Harbor Boater Service Area, the supplementary restrictions were established and filed of record. Through the supplementary restrictions, the restated restrictions were made applicable to Oak Harbor Boater Service Area. See Article XII, supplementary restrictions. However, Article 11.11 of the supplementary restrictions, governing "Duration, Amendment, and Termination," specifically provides that if a conflict arose between the two sets of restrictions, the supplementary restrictions controlled.

*817 Description
The restated restrictions contain a legal property description of the Oak Harbor PUD. The supplementary restrictions filed in the public record are entitled "SUPPLEMENTARY DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR OAK HARBOR BOATER SERVICE AREA." The introductory paragraph of the supplementary restrictions states that "Declarant [, Landmark Land Company of Louisiana, Inc.,] is the owner and developer of certain real property situated in the Parish of St. Tammany, State of Louisiana, known as Oak Harbor Boater Service Area, which property is more particularly described on Exhibit `B' attached hereto and made a part hereof (hereinafter the `Property') ...." However, Exhibit "B" was not attached to the supplementary restrictions filed in the parish public record in 1994. Landmark sold lots 1-21, 23 and 24 of the Oak Harbor Boater Service Area on July 29, 1994. The cash sale document fully described the property conveyed, including the name of Oak Harbor Boater Service Area, the township and range, a listing of lot numbers, and a reference to the official plan of the Oak Harbor Boater Service Area, found in Map File Number 1053-B filed in the public record on June 10, 1991. Landmark's vendees sold the same property in January of 1997. The 1997 act of sale also contained a full description of the property and referred to the official plan of Oak Harbor Boater Service Area found in Map File Number 1053-B in the parish public record. By act of sale dated August 20, 2003, Millennium acquired certain lots in the Oak Harbor Boater Service Area. The sale document described the property by township and range in St. Tammany Parish, "in that part thereof known as OAK HARBOR BOATER SERVICE AREA, and being more fully described as LOTS 1, 2, 3, 4, 5, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 23 and 24 ..., as more fully shown by reference to the official plan of Oak Harbor Boater Service Area," found in Map File Number 1053-B, and stated that the said property was subject to the restated and supplemental restrictions. Esplanade acquired lot 10 from Millennium by an act of sale dated August 25, 2004. Although the act stated that the sale was made subject to the second supplementary restrictions, an exhibit to the act referenced the restated and supplementary restrictions as cancelled.[4]
Building restrictions are incorporeal immovables and sui generis real rights likened to predial servitudes. LSA-C.C. art. 777. As real rights, building restrictions are not rights personal to the vendor. Rather, they inure to the benefit of all other property owners under a general plan of development, and are real rights running with the land. Once they are recorded in the public records, a subsequent acquirer of immovable property burdened with such restrictions is bound by them. The restrictions need not appear in the act of acquisition of the present owner or in his chain of title. It suffices that the document establishing the restrictions was filed for registry in the public record at the time the original subdivider conveyed the property to the ancestor of the present owner. Five N Company, L.L.C. v. Singer A & P Remainder Trust, 97-2165, pp. 4-5 (La.App. 1 Cir. 11/6/98), 721 So.2d 1066, 1068, writ denied, 98-3051 (La.2/5/99), 738 So.2d 4; Blessey v. McHugh, 94-0555, p. 8 (La.App. 1 Cir. 7/27/95), 664 So.2d 115, 119-20. Building *818 restrictions may be amended or terminated as provided in the act of creation. LSA-C.C. art. 780 & LSA-R.S. 9:1141.5-1141.6. In the absence of such a provision in the act, the restrictions may be amended or terminated as prescribed by LSA-C.C. art. 780. See LSA-R.S. 9:1141.5-1141.6.
For an act to be translative of title to immovable property, one must be reasonably able to identify and locate the property by the description in the document or with the aid of extrinsic evidence admissible under the rules of evidence, including other documents in the public record. Canterberry v. Slade Brothers, 232 La. 1081, 96 So.2d 4, 9-11 (1957) (description in mortgage further identified with reference to prior transfers in public record); McClendon v. Thomas, 99-1954, pp. 4-5 (La.App. 1 Cir. 9/22/00), 768 So.2d 261, 264; Florida v. Roscoe, 479 So.2d 406, 408 (La.App. 1 Cir.1985); Bishop Homes, Inc. v. Devall, 336 So.2d 313, 318-20 (La. App. 1 Cir.), cert. denied, 338 So.2d 1155 (La.1976) (acquisitive prescription case with reference to descriptions in the chain of title utilizing tract names). Thus, it follows that the validity of real rights that affect one's title in immovable property, such as building restrictions, rests on a similar rule of reasonable identification.
The subdivision name used as a description in the supplementary restrictions was not a complete legal description. However, we find that the property in question could be reasonably identified with the aid of the public record documents admitted at trial that referenced the specific subdivision or tract name of Oak Harbor Boater Service Area. Particularly useful were the general plan in Map File Number 1053-B, the acts of sale in Millennium's chain of title, and Millennium's own act of acquisition. We also find no error in the trial court's finding that Millennium's own act of acquisition evinced notice of the full property description and application of the restated and supplementary restrictions. Thus, we affirm the holding that the property in question was subject to the restated and supplementary restrictions at the time Millennium acquired it. The question then becomes whether the second supplementary restrictions filed by defendants, revoked or superseded the restated and supplementary restrictions.

Procedure for Amendment or Termination
For a valid amendment under the restated restrictions, action by the "Declarant," identified as Landmark Company of Louisiana, Inc. (Landmark), is required. See Article XIV, Section 8(b). Further, Article 11.11 C of the supplementary restrictions requires (1) a fifty percent vote of "a Quorum of the Owners of the Lots," (2) disallows any amendment affecting the Declarant's rights "without the consent of Declarant," and (3) states that the amendment "shall be effective when executed by the President and Secretary of the Association who shall certify that the amendment has been approved as hereinabove provided, and recorded" in the public record. Article 1.3 defines "Association" as the Oak Harbor Property Owners' Association, Inc.
For termination, the restated restrictions require the same action by the Declarant as for amendment. Additionally, under the supplementary restrictions, Article 11.11 A provides that the restrictions are to run until 2010, and automatically extend for terms of ten years each, unless the restrictions are "expressly terminated by an instrument signed by not less than seventy-five (75%) percent of the votes of the Members [of the entire Association]" at the end of the original "Anniversary Date, or at the expiration of any ten (10) *819 year extension term ...." (Brackets appear in the quoted source material.)
As noted above, the Oak Harbor Boater Service Area is subject to both sets of restrictions. If a conflict arises, the supplementary restrictions control over the restated. Article 11.11, supplementary restrictions.
Defendants assert that, at the time the second supplementary restrictions were confected, Landmark had been dissolved and no new Declarant had been assigned. Thus, in the absence of a Declarant, Millennium's vote as owner of more than eighty (80) percent of the lots in the Oak Harbor Boater Service Area, was sufficient to approve and authorize the adoption of the second supplementary restrictions. From our review of the record before us, defendants' argument fails in several respects.
Article 12.1 of the second supplementary restrictions states, as follows: "Upon recordation ..., all prior covenants, conditions and restrictions to which the Property was subject to prior to this amendment, as provided herein, are hereby revoked, rendered null and void and declared to be of no legal effect." Thus, despite the use of the term "amendment," in the above paragraph and throughout the document, the goal and actual effect of the second supplementary restrictions was revocation or termination of the restated and supplementary restrictions. Under Article 11.11 A of the supplementary restrictions, the restrictions continue to run with the land until the anniversary date in 2010, "and thereafter shall be automatically extended for successive terms of ten (10) years each," unless at the end of a term, the restrictions are "expressly terminated by an instrument signed by not less than seventy-five percent (75%) of the votes of the [Oak Harbor Property Owners' Association, Inc.,]" not merely the owner or owners of the lots in the Oak Harbor Boater Service Area of the Oak Harbor PUD.[5] The matter was never placed before the Oak Harbor Property Owners' Association, Inc. for a vote. Therefore, the vote by Millennium, notwithstanding its ownership of more than eighty (80) percent of the lots in the Oak Harbor Boater Service Area, was not sufficient to terminate the supplementary restrictions, and thus, not sufficient to terminate the restated restrictions.
Furthermore, we find no merit in defendants' alternative arguments. First, we find that the document relied on by plaintiffs does not reasonably support the finding below that the rights and duties of the "Declarant" for Oak Harbor Boater Service Area were specifically assigned to Azalea Lakes Partnership.[6] We also note that the only evidence of a dissolution of Landmark was proffered, and defendants did not assign error to the trial court's failure to admit the alleged evidence of dissolution. Thus, even if the second supplementary restrictions could be characterized as an amendment, the failure to obtain the Declarant's approval for a significant *820 amendment was fatal to the second supplementary restrictions. Lastly, even if we assume that any remaining rights of the dissolved corporation passed "by operation of law" into oblivion, and the changes were merely amendments, Millennium failed to obtain the necessary execution, certification, and filing by the "President and Secretary of the [Oak Harbor Property Owners' Association, Inc.]," of the alleged amendments. Articles 1.3, 1.8, & 11.11 C, supplementary restrictions. Therefore, we affirm the trial court's holding that the second supplementary restrictions were invalid, and the court's order to remove them from the parish public record.

CONCLUSION
For these reasons, we reverse the trial court's finding that Azalea Lakes Partnership was the "Declarant" for the Oak Harbor Boater Service Area, and affirm the remainder of the judgment. The costs of the appeal are assessed to defendants, Millennium Group I, L.L.C. and Esplanade Title, Inc.
REVERSED IN PART AND AFFIRMED IN PART.
NOTES
[1] Both the restated and supplementary restrictions are registered in the public records of St. Tammany Parish.
[2] Plaintiffs, pursuant to their authority to enforce applicable building restrictions, instituted the suit by filing a petition for an injunction and temporary restraining order against the defendants. See Article XIV, Section 2 B of the restated restrictions.
[3] The defendants also argued that changes in the parish zoning passed after the restated and supplementary restrictions were filed in the public record effectively revoked those restrictions. However, it is well settled that zoning ordinances neither terminate nor supersede existing building restrictions. Annison v. Hoover, 517 So.2d 420, 422 (La.App. 1 Cir.1987), writ denied, 519 So.2d 148 (La. 1988); see also Alfortish v. Wagner, 200 La. 198, 7 So.2d 708, 712 (1942); Cabibi v. Jones, 391 So.2d 461, 464 (La.App. 4 Cir.1980).
[4] The judgment appealed held the second supplementary restrictions to be invalid, and ordered their removal from the public record.
[5] Millennium did not assert or show that it owned property in the Oak Harbor PUD, other than the Oak Harbor Boater Service Area.
[6] A transfer of the rights of the "Declarant" must be "specifically set forth in the instrument of succession or assignment or unless such rights, powers and duties pass by operation of law." Article 1.8, supplementary restrictions. Although an assignment from Landmark to Azalea Lakes Partnership was filed in the public record by an act of deposit, the assignment is linked with specificity only to "Property" purchased by Azalea Lakes Partnership, which admittedly did not include the Oak Harbor Boater Service Area. A simple listing of the supplementary restrictions in an exhibit to the assignment is too general to effect a specific transfer of Declarant's rights to a different subdivision or tract.