STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-1099

LOUISIANA BUREAU OF CREDIT CONTROL, INC.

VERSUS

POSEY E. LANDECHE, JR.

************

APPEAL FROM THE
LAFAYETTE CITY COURT,
PARISH OF LAFAYETTE, NO. 2006CV00396
HONORABLE FRANCES M. BOUILLION, DISTRICT JUDGE

************

JIMMIE C. PETERS
JUDGE

************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and
Michael G. Sullivan, Judges.

AFFIRMED.

John G. Poteet, Jr.
Attorney at Law
Post Office Box 4603
Lafayette, LA 70502
(337) 237-5911
COUNSEL FOR PLAINTIFF/APPELLANT:
    Louisiana Bureau of Credit Control, Inc.


Paul G. Moresi, III
Attorney at Law
Post Office Box 1140
Abbeville, LA 70511-1140
(337) 898-0111
COUNSEL FOR DEFENDANT/APPELLEE:
    Posey E. Landeche, Jr.

PETERS, J.

The plaintiff, Louisiana Bureau of Credit Control, Inc. (LBCC), appeals the trial court's judgment granting the defendant, Posey E. Landeche, Jr., an involuntary dismissal of LLBC's suit against him. For the following reasons, we affirm.

**DISCUSSION OF THE RECORD**

The facts in this litigation are not in dispute. Mr. Landeche is the owner of immovable property consisting of three lots located in the Jackson Square Subdivision (Subdivision), situated in Lafayette Parish, Louisiana. All of the immovable property located in the Subdivision is subject to the terms and conditions imposed by the Jackson Square Homeowners Association, Inc. (Association), a nonprofit corporation formed in April of 1981, for the purpose of "provid[ing] for maintenance, preservation and architectural control of the residential lots and areas" within the Subdivision. As a record owner of lots in the Subdivision, Mr. Landeche is subject to the terms and conditions established by the Association.

At its annual meeting held on January 14, 1998, the Association attempted to raise the quarterly assessment imposed on the property owners to $20.00 per lot.[1] Despite receiving notice of the Association's action, Mr. Landeche has failed to pay any of the quarterly assessments on his three lots. In 2006, the Association assigned all of its rights in Mr. Landeche's overdue assessments to LBCC. After making demand on Mr. Landeche to no avail, LBCC filed the instant suit, seeking judgment against Mr. Landeche for the unpaid assessments[2] and attorney fees.

Mr. Landeche responded to the suit by filing, among other pleadings, an exception of prescription asserting that LBCC's suit was based on open account and,

---

[1]Testimony was presented that prior to this time, an assessment existed of $15.00 per lot.

[2]In pleadings, LBCC asserted that the amount due was $9,258.79.

therefore, subject to a three-year liberative prescription. At the beginning of the trial on the merits, the trial court granted Mr. Landeche's prescription exception for all amounts that had become due prior to March 24, 2003. Thereafter, at the close of the presentation of evidence by LBCC, the trial court granted Mr. Landeche's motion for involuntary dismissal. In doing so, the trial court concluded that LBCC failed to prove that the Association's quarterly assessment was agreed to by three-quarters of the lot owners as required by La.R.S. 9:1141.6. After the trial court rejected its motion for a new trial, LBCC perfected this appeal.

## OPINION

In its appeal, LBCC asserts that the trial court erred in concluding that the assessment at issue is a building restriction pursuant to La.R.S. 9:1141.5 and in determining that the applicable prescription period is three years and not ten years. In raising its arguments on appeal, LBCC argues that we should review the trial court's conclusions under the manifest error/clearly wrong standard. However, as previously stated, the facts are not in dispute. Thus, the issues before us are questions of law. That being the case, our task is simply to decide whether the trial court's findings were correct. *Johnson v. Calcasieu Parish Sheriff's Dep't*, 06-1179 (La.App. 3 Cir. 2/7/07), 951 So.2d 496.

The first issue to be decided in this appeal is whether the Association's assessment constitutes a building restriction rather than a personal obligation. That issue is resolved in favor of Mr. Landeche by reference to the jurisprudence as well as the pertinent legislation.

> Building restrictions are incorporeal immovables and *sui generis* real rights likened to predial servitudes. LSA-C.C. art. 777. As real rights, building restrictions are not rights personal to the vendor. Rather, they inure to the benefit of all other property owners under a

2

general plan of development, and are real rights running with the land. Once they are recorded in the public records, a subsequent acquirer of immovable property burdened with such restrictions is bound by them. . . . Building restrictions may be amended or terminated as provided in the act of creation. LSA-C.C. art. 780 & LSA-R.S. 9:1141.5-1141.6. In the absence of such a provision in the act, the restrictions may be amended or terminated as prescribed by LSA-C.C. art. 780. *See* LSA-R.S. 9:1141.5-1141.6.

*Oak Harbor Prop. Owners' Ass'n, Inc. v. Millennium Group I, L.L.C.*, 05-802, pp. 5-6 (La.App. 1 Cir. 5/5/06), 934 So.2d 814, 817-18 (citations omitted). *See also Brier Lake, Inc. v. Jones*, 97-2413 (La. 4/14/98), 710 So.2d 1054.

The Louisiana Homeowners Association Act (Act), La.R.S. 9:1141.1, *et seq.*, which was enacted in 1999, and applies to all residential planned communities, also addresses this issue. The imposition of an affirmative duty, "including the affirmative duty to pay monthly or periodic dues or fees, or assessments for a particular expense or capital improvement, that are reasonable for the maintenance, improvement, or safety, or any combination thereof, of the planned community" constitutes a building restriction. La.R.S. 9:1141.5. The provisions of the Act are remedial in nature and, therefore, apply both prospectively and retroactively. *See* Comments to La.R.S. 9:1141.1, *et seq.*[3]

The Act only applies, however, when an association's articles of incorporation, bylaws, restrictions, or other community documents are silent on a relevant issue. La.R.S. 9:1141.3(A). In the absence of a procedure for the establishment/amendment of a building restriction in an association's community papers, La.R.S. 9:1141.6(B) provides:

---

[3]The Legislative Intent of La.R.S. 9:1141.1 states, "*The provisions of this Act legislatively overrule the case of Brier Lake, Inc. v. Jones, 97-C-2413 (La. 4/14/98); 710 So.2d 1054, are remedial, and shall apply both prospectively and retroactively.*"

(1) Building restrictions may be established by agreement of three-fourths of the lot owners.

(2) Existing building restrictions may be made more onerous or increased by agreement of two-thirds of the lot owners.

(3) Existing building restrictions may be made less onerous, reduced, or terminated by agreement of more than one-half of the lot owners.

In the matter before us, Article VI of the Association's Articles of Incorporation provides that the Association shall:

(a) Exercise all of the powers and privileges and to perform all of the duties and obligations of the Association as set forth in that certain Act amending and supplementing the Restrictions of the Jackson Square Subdivision, hereinafter called the "Restrictions" applicable to the property and recorded in the office of the Clerk of Court for the Parish of Lafayette, Louisiana, under Act Number 79-001865 of said office, and as may be amended from time to time in the future, said restrictions being incorporated herein as if set forth at length.

(b) Fix, levy, collect and enforce payment by *any lawful means*, all charges or assessments pursuant to the terms of the restrictions; to pay all expenses in connection therewith and all office and other expenses incident to the conduct of the business of the Association, including all licenses, taxes or governmental charges levied or imposed against the property of the Association.

(Emphasis added).

Furthermore, Article X of the Association's By-Laws provides that "[a]s more fully provided in the Restrictions each member is obligated to pay the Association annual maintenance charges and special assessments for capital improvements which are secured by a continuing lien upon the property against which the assessment is made." Unfortunately, the Restrictions are silent on the issue of yearly or quarterly assessments and leave maintenance of the subdivision to the individual lot owners, subject to penalties for failing to maintain their lots in a presentable manner as proscribed by the Subdivision's developers.

4

With regard to annual and special meetings, Article III, Section 3 of the Association's By-Laws provides that "[t]he presence at the meeting of members entitled to cast, or of proxies entitled to case [sic], one-tenth (1/10) of the votes of each class membership shall constitute a quorum for any action *except* as otherwise provided in the Articles of Incorporation, the Restrictions, or these By-Laws." (Emphasis added). In this case, LBCC established that the January 14, 1998 meeting where the assessment was enacted had "a quorum to conduct business."[4]

We find that the trial court correctly concluded that the quarterly assessment constituted a building restriction which is subject to the provisions of the Act. We also find no error in the trial court's determination that the Association's community documents failed to specify the procedure for establishing restrictions, thus making La.R.S. 9:1141.6 applicable. The quorum present at the January 14, 1998 meeting certainly had the authority to take some actions binding on the membership. However, the Articles of Incorporation provided that fixing, levying, or collecting and enforcing assessments were limited to "lawful means," and all of the Association documents are silent as to the definition of that term. Thus, such action is governed by La.R.S. 9:1141.6(2), *i.e.*, that the restriction increase was established by agreement of at least two-thirds of the lot owners. The record contains no evidence of compliance with that requirement.

Because we find that LBCC failed in its burden of proof, we need not consider the assignment of error addressing the trial court's grant of the exception of prescription.

---

[4]LBCC established this through the minutes of the annual meeting of that date.

**DISPOSITION**

For the foregoing reasons, we affirm the trial court judgment in all respects.

We tax all costs of this appeal to Louisiana Bureau of Credit Control, Inc.

**AFFIRMED.**