# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2022 CA 0936

### BRUCE CHILDERS

### VERSUS

### LAUREL LAKES ESTATES HOMEOWNERS' ASSOCIATION, INC.

Judgment Rendered: __MAY 2 4 2023__

* * * * * *

On Appeal from the Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket No. 699089
Honorable Wilson E. Fields, Judge Presiding

* * * * * *

Leah C. Cook
Taylor Dunne
Thomas Gildersleeve
Baton Rouge, Louisiana

Counsel for Plaintiff/Appellant
Bruce Childers


Christopher L. Whittington
Christopher M. Patin
Edward J. Laperouse, II
Laura E. Marcantel
Trenton C. Ball
Baton Rouge, Louisiana

Counsel for Defendant/Appellee
Laurel Lakes Estates Homeowners'
Association, Inc.

* * * * * *

**BEFORE: McCLENDON, THERIOT, AND HOLDRIDGE, JJ.**

Holdridge J. agrees in part & dissents in part

**McCLENDON, J.**

Plaintiff/defendant-in-reconvention appeals partial summary judgment dismissing his claims against the defendant/plaintiff-in-reconvention on the basis of prescription. For the reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

The instant appeal arises from a dispute between Bruce Childers, owner of a home in Laurel Lakes Estates subdivision (the subdivision), and the Laurel Lakes Estates Homeowners' Association, Inc. (the HOA). Laurel Lakes Estates is a forty-three-lot subdivision in East Baton Rouge Parish. The original developer, Laurel Lakes Development Corporation (original developer), executed a "Declaration of Protective Covenants and Restrictions for Laurel Lakes Estates" (Declaration) on December 21, 1993, which was filed and recorded with the East Baton Rouge Parish Clerk of Court on that same date. Childers acquired Lot 33 in or around 2001 and later built a home thereon. Subsequently, numerous amendments were made to the Declaration. The dispute between Childers and the HOA resulted from Childers' alleged failure to comply with certain landscape maintenance requirements set forth in the amended Declaration and refusal to pay associated fines.

On August 28, 2020, Childers filed a petition for declaratory judgment. Childers argued that certain amendments to the Declaration were not passed in accordance with the process outlined in the Declaration and/or violated the terms of the Declaration. Thus, Childers prayed for judgment declaring that the challenged amendments were invalid and of no effect; that Childers be awarded damages for all past charged assessments which were not due and owing and the costs of prosecuting the suit for declaratory judgment; and ordering any other relief to which he may be justly entitled.

In response to Childers' petition for declaratory judgment, the HOA filed an answer and reconventional demand and named Childers as defendant-in-reconvention therein. The HOA alleged that despite repeated requests that Childers maintain his property in compliance with the Declaration, Childers consistently failed and refused to do so. By way of example, the HOA alleged Childers failed and refused to keep and maintain his property in a neat, attractive, and/or safe condition; maintain the landscaping; keep the property

2

free of rubbish, trash, debris, and/or weeds; and keep his yard mowed in accordance with the requirements of the Declaration. The HOA maintained it assessed fines against Childers and gave him notice of same pursuant to the provisions of the Declaration. The HOA further alleged that although Childers made some changes in response to the fines, he remained in breach of the Declaration and refused to pay the fines. Claiming that Childers' actions damaged the neighborhood, the HOA sought damages in the total amount of the fines, $3,300.00, plus interest at eighteen percent, and attorney fees. The HOA additionally sought judgment declaring that the Declaration, and all amendments thereto, were valid and enforceable.

Childers answered the HOA's First Amended Reconventional Demand, denying that he was in breach and default of the Declaration.

On November 18, 2021, the HOA filed a motion seeking partial summary judgment dismissing several of Childers' claims. The HOA argued that Childers essentially sought to have the challenged amendments declared relatively null, and therefore several of his claims were prescribed pursuant to LSA-C.C. art. 2032 because the challenged amendments were filed into the public record more than five years before Childers filed his petition. Alternatively, the HOA argued that even if Childers' claims were not prescribed, he could not provide factual support supporting his contention that the challenged amendments were legally invalid because they were not passed in accordance with the process outlined in the Declaration and/or violated the terms of the Declaration. In support of the HOA's motion, it attached: Exhibit A, First Amended Reconventional Demand; Exhibit B, Declaration of Protective Covenants and Restrictions for Laurel Lakes Estates, which was attached to Childers' deposition (as Exhibit 1 thereto); Exhibit C, Childers' responses to discovery requests propounded by the HOA; Exhibit D, the First Amendment to the Declaration, which was attached to Childers' deposition (as Exhibit 2 thereto); Exhibit E, the Fifth Amendment to the Declaration, which was attached to Childers' deposition (as Exhibit 6 thereto); Exhibit F, an excerpt from the deposition of Gina B. Calahan; Exhibit G, the Sixth Amendment to the Declaration, which was attached to Childers' deposition (as Exhibit 7 thereto); Exhibit H, the Seventh Amendment to the Declaration, which was attached to Childers' deposition (as Exhibit 8 thereto); Exhibit I,

3

the Eighth Amendment to the Declaration, which was attached to Childers' deposition (as Exhibit 9 thereto); and Exhibit J, Childers' Petition for Declaratory Judgment.

Childers opposed the HOA's motion for partial summary judgment. Regarding the HOA's argument that several of his claims were prescribed, Childers contended that LSA-C.C. art. 2032 was inapplicable because the challenged amendments were absolutely null, rather than relatively null, and therefore not susceptible to prescription. Alternatively, Childers argued that if the challenged amendments were relatively null, they were not prescribed because he brought his action within five years of discovering the ground for nullity. With respect to the HOA's argument that Childers could not produce factual support for his claims that the challenged amendments were legally invalid, Childers argued that genuine issues of material fact existed regarding whether the challenged amendments were passed in accordance with the process outlined in the Declaration and/or violated the terms of the Declaration. In support of Childers' opposition, he submitted the following: Exhibit P-1, Childers' Petition for Declaratory Judgment; Exhibit P-2, Childers' affidavit; Exhibit P-3, the transcript of Childers' deposition; Exhibit P-4, the transcript of the deposition of Gina B. Calahan; Exhibit H, the Fifth Amendment to the Declaration; Exhibit I, the act of cash sale; Exhibit J, the lot description page; and Exhibit P-5, the transcript of the deposition of the representative of the HOA.

The HOA's motion for partial summary judgment was tried on January 10, 2022. The trial court found no genuine issues of material fact existed to preclude summary judgment and granted the HOA's motion, stating that it "[would] adopt the [HOA's memorandum] in support [of its motion for partial summary judgment] as its reasons for judgment." On January 24, 2022, the trial court executed a written judgment that granted the HOA's motion for partial summary judgment in conformity with its oral ruling, and dismissed Childers' claims against the HOA with prejudice. Childers appeals.

4

# THE DECLARATION AND THE CHALLENGED AMENDMENTS

The Declaration, as originally filed, provides, in pertinent part:

> WHEREAS, in order to create, establish[,] and execute a uniform plan for the improvement, development, sale, use[,] and enjoyment of the Property, Declarant[, the original developer,] does hereby desire to declare, adopt and establish certain restrictions and easements for the Estates (the "Estates") which will comprise the Property.

> WHEREAS, Developer desires to provide for the preservation and enhancement of the property values in [the subdivision] and for the maintenance of the Property and improvements thereon, and to this end desires to subject the real property to the restrictions, servitudes, charges and liens hereinafter set forth, each and all of which is and are for the benefit of said Property and each owner of Estates therein; and

> WHEREAS, Developer has deemed it desirable, for the efficient preservation of the values of the Property, to create an agency to which should be delegated and assigned the powers of owning, maintaining[,] and administering the common area ("Common Area") and improvements thereon and administering and enforcing the covenants and restrictions and collecting and disbursing the assessments and charges hereinafter created; and

> WHEREAS, Developer has caused to be incorporated, under the laws of the State of Louisiana, [the HOA], a nonprofit corporation, for the purpose of exercising the aforesaid functions;

> NOW, THEREFORE, for and in consideration of the benefit to be derived by Declarant, and any subsequent Owner of Estates in the Property, Declarant, for itself and each and every subsequent Owner ("Owner" or "Owners") of any and all portions of the Property, does hereby declare, adopt[,] and establish the following restrictions and easements . . . .

Article VI, Section 7 of the Declaration, as originally filed, provides:

> Amendment. This Declaration may be amended unilaterally at any time and from time to time by Developer (i) in order to execute the Developer's uniform plan for the improvement, development, sale, use, maintenance[,] and enjoyment of the Property, or (ii) for the preservation and enhancement of the value of the Property . . . [P]rovided, however, any such amendment shall not make any substantial changes in any of the provisions of this Declaration. . . . Any such amendment shall not become effective until the instrument evidencing such change has been filed of record. . . . Every purchaser or grantee of any interest in any real property made subject to this Declaration, by acceptance of a deed or other conveyance therefor, thereby agrees that this Declaration may be amended only as provided in this Section.

As noted above, Childers' petition for declaratory judgment challenged several amendments made to the Declaration. The First Amendment, filed and recorded on May 14, 2004, addressed Article II, section 4(g), which concerned annual and special assessments. Pursuant to the original Declaration, the Developer was not responsible for assessments on Estates owned by the Developer, but was required to "fund any deficit

5

which may exist between assessments and the annual budget[.]"However, the First Amendment removed the requirement that the Developer would fund such a deficit. The Fifth Amendment, filed and recorded by the original developer on March 1, 2013, addressed Article I, section 9, which originally defined the term "Estate" as "any parcel of land shown upon any recorded subdivision plat of the Property upon which a single-family residence may be constructed." As amended, Article I, section 9 added an exception for lots 38 and 39, providing that they "shall be considered one (1) 'estate' for purposes of annual and special assessments, unless and until such a time as a 'single-family residence' exists on both lots 38 and 39." Childers argued that the First and Fifth Amendments were invalid because they (1) did not satisfy the requirements for amendment of the Declaration as set forth in Article VI, Section 7, (2) substantially changed the Declaration, and (3) violated Article II, section 4(f), which required that assessments be applied uniformly to all Estates.

In the Sixth Amendment, filed and recorded on October 21, 2013, Article I, section 7, defining the term "Developer," was amended. The original Declaration defined "Developer" as "Laurel Lakes Development Corporation." As amended, "Developer" was defined as "Laurel Lakes Properties, L.L.C." Childers argued that the October 21, 2013 Amendment was invalid because it (1) did not satisfy the requirements for amendment of the Declaration as set forth in Article VI, Section 7, (2) substantially changed the Declaration, and (3) violated the meaning, spirit, and intent of the Declaration.

Protesting the replacement of the original developer by Laurel Lakes Properties, L.L.C., Childers further argued that any and all amendments "purportedly adopted by Laurel Lakes Properties, L.L.C., [were] invalid and of no effect" because Laurel Lakes Properties, L.L.C. was not the developer and therefore lacked authority to make the amendments. In particular, Childers challenged the Seventh and Eighth Amendments. The Seventh Amendment, filed and recorded on May 7, 2014, by Laurel Lakes Properties, L.L.C., altered the notice requirements to the owners and developer to establish notice by electronic mail delivery. The Eighth Amendment, filed and recorded on October 2, 2018, imposed landscape maintenance requirements and associated fines.

6

Finally, Childers argued that Laurel Lakes Properties, L.L.C., "[was] operating solely for the benefit of Spencer and Gina Calahan [the members and managers of Laurel Lakes Properties, L.L.C.], not in order to execute any sort of uniform plan for the improvement, development, sale, use, maintenance, and enjoyment of all of the [subdivision]." For example, Childers argued that the Calahans own lots 38 and 39, and Laurel Lakes Properties, L.L.C. owns lots 11, 14, and 15. Thus, the Calahans have paid assessments equivalent to estates located on one lot, as opposed to two lots, on lots 38 and 39, and Laurel Lakes Properties, L.L.C. has paid no assessments in connection with lots 11, 14, and 15.

## SUMMARY JUDGMENT

Appellate courts review summary judgments *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. **Carman v. Livers**, 2021-0701 (La.App. 1 Cir. 4/6/22), 341 So.3d 749, 757, writ denied, 2022-00753 (La. 9/20/22), 346 So.3d 290. That is, after an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(A)(3). A "material fact" is one that potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A "genuine issue of material fact" is a material fact about which reasonable people can disagree; if reasonable people can reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. For purposes of summary judgment, the materiality of facts is determined by the substantive law applicable to the case. **Moore v. Chevron USA**, 2016-0805 (La.App. 1 Cir. 5/25/17), 222 So.3d 51, 54, writ denied, 2017-1085 (La. 10/16/17), 228 So.3d 1221.

7

## LOUISIANA HOMEOWNERS ASSOCIATION ACT
## AND BUILDING RESTRICTIONS

The Louisiana Homeowners Association Act, LSA-R.S. 9:1141.1, *et seq.* ("Homeowners Association Act" or "Act"), was enacted in 1999. LSA-R.S. 9:1141.3(A); **Louisiana Bureau of Credit Control, Inc. v. Landeche**, 2008-1099 (La.App. 3 Cir. 3/4/09), 6 So.3d 935, 937. The provisions of the Act are remedial in nature and, therefore, apply both prospectively and retroactively. See Editors' Notes to LSA-R.S. 9:1141.1, *et seq.*

For purposes of the Act, a homeowners association is defined as "a nonprofit corporation, unincorporated association, or other legal entity, which is created pursuant to a declaration, whose members consist primarily of lot owners, and which is created to manage or regulate, or both, the residential planned community." LSA-R.S. 9:1141.2(5). Each owner of a lot in the planned community regulated by a homeowners association is a mandatory member of that association by virtue of such ownership. LSA-R.S. 9:1141.2(7). A "declaration" is defined in the Act as any instrument, however denominated, that establishes or regulates, or both, a residential planned community, and any amendment thereto. LSA-R.S. 9:1141.2(4).

The Act applies to all residential planned communities whose declarations have been duly executed and filed for registry. LSA-R.S. 9:1141.3(A); **Louisiana Bureau of Credit Control, Inc.**, 6 So.3d at 937. Such community or organizational documents, including any building restrictions, which in this case consist of the Declaration and subsequent amendments thereto, "shall have the force of law between the homeowners association and the individual lot owners and as between individual lot owners." LSA-R.S. 9:1141.8. However, the Act cannot be construed to affect the validity or superiority of any provision of a community document; only to the extent the community documents are silent shall the provisions of the Act apply. LSA-R.S. 9:1141.3(A); **Louisiana Bureau of Credit Control, Inc.**, 6 So.3d at 937-38.

The duly executed Declaration herein established the planned community of Laurel Lakes Estates and subjected the property defined therein to certain building restrictions, rights of use, servitudes, covenants, and charges for the benefit of the property and the

owners thereof. **Port Louis Owners Association, Inc. v. Caronna**, 2021-0901 (La.App. 1 Cir. 3/30/22), 2022 WL 999738, *2 (unpublished), writ denied, 2022-00861 (La. 9/27/22), 347 So.3d 158. Under the Homeowners Association Act, the imposition of an affirmative duty, "including the affirmative duty to pay monthly or periodic dues or fees, or assessments for a particular expense or capital improvement, that are reasonable for the maintenance, improvement, or safety, or any combination thereof, of the planned community" constitutes a building restriction.[1] LSA-R.S. 9:1141.5(B). Once building restrictions are recorded in the public records, a subsequent acquirer of immovable property burdened with such restrictions is bound by them. The restrictions need not appear in the act of acquisition of the present owner or in his chain of title. It suffices that the document establishing the restrictions was filed for registry in the public record at the time the original subdivider conveyed the property to the ancestor of the present owner. **Oak Harbor**, 934 So.2d at 817.

Building restrictions may be amended or terminated as provided in the act of creation, and in the absence of such a provision in the act of creation, the restrictions may be amended or terminated as prescribed by LSA-C.C. art. 780. See LSA-R.S. 9:1141.5-1141.6; **Oak Harbor**, 934 So.2d at 817-18. In the case of building restrictions imposed on a subdivision, the restrictions may be likened to a contract among the property owners and the developer. Thus, when disputes arise as to the extent or limitation of a restriction affecting immovable property, courts look to the express intention of the party encumbering the property as set forth in the instruments embodying the restrictions, giving due consideration to the entire document. **Bordelon v. Homeowners Association of Lake Ramsey, Inc.**, 2004-1115 (La.App. 1 Cir. 5/6/05), 916 So.2d 179, 183.

---

[1] Building restrictions are incorporeal immovables and *sui generis* real rights likened to predial servitudes. LSA-C.C. art. 777. As real rights, building restrictions are not rights personal to the vendor. Rather, they inure to the benefit of all other property owners under a general plan of development, and are real rights running with the land. **Oak Harbor Property Owners' Association, Inc. v. Millennium Group I, L.L.C.**, 2005-0802 (La.App. 1 Cir. 5/5/06), 934 So.2d 814, 817.

## NULLITY OF CONTRACTS

The covenants between homeowners and homeowners associations are considered contracts. See **English Turn Prop. Owner's Association, Inc. v. Contogouris**, 2016-1284 (La.App. 4 Cir. 10/18/17), 228 So.3d 793, 797-799, writ denied sub nom. **English Turn Prop. Owner's Association, Inc. v. Marilyn Cutrone Contogouris**, 2017-2059 (La. 2/2/18), 235 So.3d 1107. Thus, they are subject to interpretation and enforcement as contracts. See **Port Louis Owners Association, Inc. v. Caronna**, 2021-0901 (La.App. 1 Cir. 3/30/22), 2022 WL 999738, *2, *8-9 (unpublished), writ denied, 2022-00861 (La. 9/27/22), 347 So. 3d 158; **Doyle v. Lonesome Development, Ltd. Liability Co.**, 2017-0787 (La.App. 1 Cir. 7/18/18), 254 So. 3d 714, 728, writ denied, 2018-1369 (La. 11/14/18), 256 So. 3d 291; **Fern Creek Owners' Association, Inc. v. City of Mandeville**, 2008-1694 (La.App. 1 Cir. 6/30/09), 21 So.3d 369, 382-83.

The proper interpretation of a contract is a question of law subject to *de novo* review on appeal. When considering legal issues, the reviewing court accords no special weight to the trial court, but conducts a *de novo* review of questions of law and renders judgment on the record. **Louisiana Machinery Co., LLC v. Bihm Equipment Co.**, 2019-1081 (La.App. 1 Cir. 8/10/21) 329 So.3d 317, 321. Further, when parties are bound by a valid contract and material facts are not in conflict, the contract's application to the case is a matter of law and summary judgment would be appropriate. **Country Club of Louisiana Property Owners Association, Inc. v. Baton Rouge Water Works Co.**, 2019-1373 (La.App. 1 Cir. 8/17/20), 311 So.3d 395, 399.

A contract is null when the requirements for its formation have not been met. LSA-C.C. art. 2029. The two types of nullities provided for in the civil code are absolute nullities, governed by LSA-C.C. art. 2030, and relative nullities, governed by LSA-C.C. art. 2031. **Radcliffe 10, L.L.C. v. Burger**, 2016-0768 (La. 1/25/17), 219 So.3d 296, 300. A contract is absolutely null when it violates a rule of public order, such as when the object of a contract is illicit or immoral. An absolutely null contract may not be confirmed. LSA-C.C. art. 2030. Further, the action for annulment of an absolutely null contract does not prescribe. LSA-C.C. art. 2032. In contrast, a contract is relatively null when it violates a

10

rule intended for the protection of private parties, as when a party lacked capacity or did not give free consent at the time the contract was made. A contract which is only relatively null may be confirmed. LSA-C.C. art. 2031. Action of annulment of a relatively null contract must be brought within five years from the time the ground for nullity either ceased, as in the case of incapacity or duress, or was discovered, as in the case of error or fraud. LSA-C.C. art. 2032. Accordingly, the question of whether Childers' claims were subject to the five-year prescriptive period of LSA-C.C. art. 2032, or were not subject to prescription at all, depends on whether the basis of the alleged nullity was a violation of a "rule of public order" intended to protect a large class of persons or a rule "intended for the protection of private parties." See LSA-C.C. arts. 2030 & 2031; see also **Radcliffe 10, L.L.C.**, 219 So.3d at 300.

## DISCUSSION

On appeal, Childers argued that the trial court erred in granting the HOA's motion for partial summary judgment because his claims are not prescribed under LSA-C.C. art. 2032. Having conducted a thorough *de novo* review of the record before us, we find that the HOA is entitled to partial summary judgment dismissing Childers' claims as a matter of law on the basis of prescription, and affirm the judgment of the trial court, for the following reasons.

In his petition, Childers alleged that the challenged amendments failed to comply with the provisions of the Declaration regarding amendments and violated the provisions of the Declaration. Because Childers alleged that the challenged amendments violated the Declaration, which was a contract between private parties and not a rule of public order, Childers' claims constitute claims of relative nullity, rather than absolute nullity. Thus, Childers was required to bring his action to annul the challenged amendments within five years from the time the ground for nullity was discovered. See LSA-C.C. art. 2032.

A summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time. LSA-C.C.P. art. 966(F)(1). In this matter, the HOA's motion for partial summary judgment set forth the issues of prescription and, alternatively, whether Childers could produce evidence

11

sufficient to meet his burden of proof on the issue of whether the challenged amendments were passed in accordance with the process outlined in the Declaration and/or violated the terms of the Declaration. The HOA's motion for partial summary judgment contended that the five-year prescriptive period began to run from the dates the challenged amendments were recorded. We agree. Thus, Childers' claims regarding the following amendments were facially prescribed: the First Amendment, filed and recorded on May 14, 2004; the Fifth Amendment, filed and recorded on March 1, 2013; the Sixth Amendment, filed and recorded on October 21, 2013; and the Seventh Amendment, filed and recorded on May 7, 2014.

Childers countered that pursuant to **Bruce v. Simonson Investments, Inc.**, 251 La. 893, 902, 207 So.2d 360, 364 (1968), requiring him to check the public records every five years would be contrary to law. In **Bruce**, the landowners voted, by majority vote as provided for in the act establishing the building restrictions, to amend the building restrictions to allow certain residential areas to be used as parking areas. However, the act set forth specific notice and meeting requirements, which were not met. **Bruce**, 207 So.2d at 363. Thus, the contested amendment, which "reflect[ed] no compliance with the notice and meeting requirements of the basic contract," was found to be void on its face. The Supreme Court held that because the contested amendment was void on its face, the five-year prescriptive period applicable to null contracts did not apply. **Bruce**, 207 So.2d at 363. Childers heavily relies on the Supreme Court's statement that, "A contrary rule, as plaintiffs have noted, would require the owners in such a subdivision to check the public records for [amending] documents at least every five years in order to preserve the building restrictions. The law wisely opposes such a result." **Bruce**, 207 So.2d at 364. However, we do not find this language from **Bruce** to be determinative of the issue before us, for several reasons.

To begin, **Bruce** is significantly distinguishable from the instant matter. In **Bruce**, the contested amendment was not executed in accordance with the notice and meeting requirements set forth in the terms of the governing document. In this matter, however, Article VI, Section 7 of the Declaration explicitly authorized the unilateral amendment of the Declaration.

12

Article VI, Section 7 provides:

> Amendment. This Declaration may be amended **unilaterally** at any time and from time to time by Developer (i) in order to execute the Developer's uniform plan for the improvement, development, sale, use, maintenance[,] and enjoyment of the Property, or (ii) for the preservation and enhancement of the value of the Property . . . [P]rovided, however, any such amendment shall not make any substantial changes in any of the provisions of this Declaration. . . . Any such amendment shall not become effective until the instrument evidencing such change has been filed of record. . . . Every purchaser or grantee of any interest in any real property made subject to this Declaration, by acceptance of a deed or other conveyance therefor, thereby agrees that this Declaration may be amended only as provided in this Section. (Emphasis added).

Thus, in stark contrast to the act at issue in **Bruce**, the Declaration in this matter authorizes unilateral amendment by the developer, without notice to the homeowners other than public recordation. Further, any amendment becomes effective when filed of record. Based on the public record, Childers could have discovered the challenged amendments, and therefore the bases for his nullity claim, within the five-year prescriptive period of each amendment. While **Bruce** states that the law wisely opposes a rule that would require owners in such a subdivision to check the public records for amending documents at least every five years in order to preserve the building restrictions, it is unclear what law **Bruce** is referring to, and we can find no law prohibiting parties from contractually binding themselves to do so.

We agree that the imposition of a requirement that an owner check the public records every five years appears undesirable. However, it is also problematic that the Declaration in this matter permits unilateral amendment by the developer, without requiring notice directed to the owners. Nevertheless, the terms of the Declaration, which "have the force of law between the [HOA] and the individual lot owners[, such as Childers,]" plainly and unambiguously contemplated unilateral amendment by the developer, without notice to the homeowners, effective upon public recordation of the instrument evidencing the amendment. See LSA-R.S. 9:1141.8. Additionally, because the Declaration was recorded prior to Childers' purchase of his lot in Laurel Lakes Estates, Childers, as a subsequent acquirer of immovable property burdened with such restrictions, was, and remains, bound by them. See **Oak Harbor**, 934 So.2d at 817. Therefore, Childers was on notice that amendments to the Declaration could occur

without his consent and would be effective upon recordation, consented to these terms, and was bound by them. Accordingly, the HOA was entitled to judgment granting its motion for partial summary judgment as a matter of law on the issue of prescription regarding the First, Fifth, Sixth, and Seventh Amendments, which were all filed and recorded more than five years prior to the institution of this suit. Having found that Childers' claims were prescribed as to these amendments, we need not consider the merits of his arguments questioning whether these amendments were proper.

Childers' challenge to the Eighth Amendment does not appear to be prescribed as it was filed and recorded on October 2, 2018. Nonetheless, having thoroughly considered the law and the record before us, we find that the trial court properly granted the HOA's motion for partial summary judgment as to same. Childers' objection to the Eighth Amendment, as set forth in his petition, was that it was "null and without effect because Laurel Lakes Properties, L.L.C. had no authority to unilaterally declare such an amendment to the Declaration because it was not the 'Developer'" as defined in the Declaration. In the HOA's motion for partial summary judgment, the HOA argued that Laurel Lakes Properties, L.L.C. had been passing and filing amendments to the Declaration as the Developer since 2014, and because Childers did not timely object to the authority of Laurel Lakes Properties, L.L.C. to amend the Declaration, Childers waived his objection to the Eighth Amendment on the basis of Laurel Lakes Properties, L.L.C.'s purported lack of authority to amend the Declaration. Significantly, as discussed above, the Sixth Amendment to the Declaration identified Laurel Lakes Properties, L.L.C. as the Developer. Further, we have found Childers' claim challenging the Sixth Amendment to be prescribed. Accordingly, Childers' argument that the Eighth Amendment is null because Laurel Lakes Properties, L.L.C. lacked authority to amend the Declaration fails.

The HOA also argued that Childers could not provide any evidence establishing that the Eighth Amendment was not enacted pursuant to the process provided in the Declaration. In opposition, Childers argued that the Eighth Amendment "fail[ed] to qualify under the enumerated items of Article VI, [Section] 7 of the Declaration," because it "was not needed in order to execute the Developer's uniform plan for the improvement, development, sale, use, maintenance[,] and enjoyment of the Property," and further,

14

"resulted in 'substantial changes in any provisions (sic) of [the] Declaration.'" We disagree. As set forth herein, Article VI, Section 7 of the Declaration provides that the Declaration may be amended unilaterally at any time by the Developer "(i) in order to execute the Developer's uniform plan for the improvement, development, sale, use, maintenance[,] and enjoyment of the Property, or (ii) for the preservation and enhancement of the value of the Property[.]" Imposition of landscape maintenance requirements is consistent with both "the improvement, development, sale, use, maintenance[,] and enjoyment of the Property," and "the preservation and enhancement of the value of the Property[.]"Further, as Childers noted in his opposition, before the Eighth Amendment was enacted, "[t]he Declaration already set forth requirements for Estate maintenance and provided the ACC with a mechanism to cure any maintenance issues[.]"Thus, the landscape maintenance requirements set forth in the Eighth Amendment do not constitute prohibited "substantial changes" to the Declaration. Accordingly, the trial court properly granted partial summary judgment dismissing Childers' claim as to the Eighth Amendment.

## CONCLUSION

For the foregoing reasons, the January 24, 2022 judgment of the trial court is affirmed. Costs of this appeal are assessed against Bruce Childers.

**AFFIRMED.**

15

| BRUCE CHILDERS | STATE OF LOUISIANA |
|---|---|
| VERSUS | COURT OF APPEAL |
| LAUREL LAKE ESTATES HOMEOWNERS' ASSOCIATION, INC. | FIRST CIRCUIT |
| | NO. 2022 CA 0936 |



**HOLDRIDGE, J., agreeing in part and dissenting in part.**

I agree in part and dissent in part with the report. I agree that the appellant's challenge to the first, fifth, sixth, and seventh amendments are prescribed. I agree that the eighth amendment is not prescribed. I further find that there are genuine issues of law and fact as to whether Laurel Lakes Properties, L.L.C. is the developer and whether it can make unilateral amendments to the Declaration.